Adnan Sadik FADDAH and Laina Kaarina Faddah, Petitioners,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 76–2429

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

June 6, 1977.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

Wallace Heitman, Dallas, Tex., for petitioners.

Philip Wilens, Acting Chief, James P. Morris, Rex L. Young, Attys., Dept. of Justice, Govt. Reg. & Labor Sect., Crim. Div., Washington, D. C., for respondent.

Before AINSWORTH, MORGAN and GEE, Circuit Judges.

AINSWORTH, Circuit Judge:

Petitioners Adnan Sadik Faddah and his wife, Laina Kaarina Faddah were ordered deported by an immigration judge in 1974. Their appeal to the Board of Immigration Appeals was dismissed. The Board has now denied the Faddahs' two motions to reopen their deportation proceedings, and the Faddahs appeal these denials.[1] We affirm the Board's decisions refusing to reopen the Faddahs' deportation proceedings.

The Faddahs are Finnish citizens. According to Mr. Faddah's deposition, he visited this country in 1967 and 1968. He testified before an immigration judge that after the 1968 visit he sold his business in Finland, his wife sold her interest in a beauty shop, and they converted the proceeds and their savings into dollars. They then obtained a visa to visit the United States.

The Faddahs entered this country on April 23, 1969 as nonimmigrant visitors authorized to remain until October 22, 1969. They overstayed their authorization and were required to appear before an immigration judge to show cause why they should not be deported. The Faddahs conceded deportability but applied for permanent resident status under section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255(a), asserting eligibility for visas as substantial investors in a business in the United States.[2] The immigration judge found that the Faddahs failed to qualify for substantial investor status, which under

1. We are empowered to review "final orders of deportation," Immigration and Nationality Act § 106, 8 U.S.C. § 1105a, including denials of motions to reopen INS proceedings, *Gena v. INS*, 5 Cir., 1970, 424 F.2d 227, 231. Review of denial of a motion to reopen is limited to determining whether the denial was an abuse of discretion, *id.* at 232; *Jarecha v. INS*, 5 Cir., 1969, 417 F.2d 220, 224–25; *see Yee Dai Shek v. INS*, 4 Cir., 1976, 541 F.2d 1067.

2. Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255, provides in pertinent part,

(a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved.
The Faddahs were unable to comply with part (2) of section 245(a) under section 212 of the Act, 8 U.S.C. § 1182, which provides in pertinent part,

(a) Except as otherwise provided in this chapter, the following classes of aliens shall be *ineligible to receive visas* and shall be excluded from admission into the United States:

current regulations requires proof of an investment of $10,000. The Faddahs had failed to file federal income tax returns for the years 1969, 1970 and 1971 and the immigration judge noted that because of this he would have exercised his discretion to deny permanent residence status to the Faddahs even had they qualified for section 245 relief. On these grounds, the immigration judge denied the Faddahs' application for adjustment of status. He granted them voluntary departure in lieu of deportation.

The Faddahs did not depart. Asserting that they had obtained labor certification and were thus eligible for visas, they reapplied for permanent resident status under section 245. A hearing on the application was held on January 2, 1974. After thoroughly reviewing the facts, the immigration judge found that the labor certification proffered by the Faddahs had been obtained by "wilful misrepresentation" and was invalid. The immigration judge observed that despite his warning to Faddah at the earlier hearing Faddah still had not filed a single income tax return since arriving in the United States almost five years earlier; for this reason he denied Faddah discretionary relief. He ordered the Faddahs deported. On May 23, 1974, the Board of Immigration Appeals dismissed the Faddahs' appeal from the decision of the immigration judge, saying,

> The immigration judge has set forth carefully the reasons why the labor certification appears to be of doubtful validity. We agree that eligibility for relief under section 245 is not established. We also agree that on this record no relief from deportation is justified as a matter of discretion.

On March 18, 1976, the Faddahs moved to reopen their cause before the Board of Immigration Appeals under section 245. (The record does not reveal how the Faddahs managed to remain in the United States for almost two years following the Board's dismissal of their appeal.) In their March 18 motion, the Faddahs asserted the availability of new evidence bearing on their eligibility for substantial investor status. They also asserted extreme hardship to their family should they be deported, because their livelihood was in this country and because their three children, one of whom was born since the Faddahs came to the United States, were educated solely in American schools and had English as their first language. (A fourth child has now been born to the Faddahs; the two children born in this country are, of course, American citizens.) After evaluating the new

(26) Any nonimmigrant who is not in possession of (A) a passport valid for a minimum period of six months from the date of the expiration of the initial period of his admission or contemplated initial period of stay authorizing him to return to the country from which he came or to proceed to and enter some other country during such period; and (B) at the time of application for admission a valid nonimmigrant visa or border crossing identification card; . . . .

[Emphasis added.] Section 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14), however, provides an exception for nonimmigrants who obtain certification from the Secretary of Labor; the Faddahs attempted to qualify under this exception, which provides:

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor [cannot obtain visas] unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the worker in the United States similarly employed.

The Attorney General has established regulations providing that an alien who does not qualify for a work permit may nevertheless receive a visa under section 212(a)(14) if he establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

8 C.F.R. § 212.8(b)(4). It was under this provision that the Faddahs attempted to obtain visas to satisfy the visa eligibility requirement of section 245.

evidence, the Board ruled that the Faddahs had "submitted nothing to show the amount of [their] total capital investment. See 8 C.F.R. 212.8(b)(4)," and that "we adhere to our prior determination that the relief sought should be denied in the exercise of discretion." The Board denied the Faddahs' motion to reopen on May 5, 1976. This denial is one of the two Board decisions presently appealed by the Faddahs.

While the Faddahs' appeal from the May 5 decision was pending before this court the Faddahs applied to the Board of Immigration Appeals for suspension of deportation under section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254, which provides for suspension of deportation of aliens who have displayed good character while residing in this country seven years and whose deportation would work severe hardship on themselves or on an American citizen member of the alien's family.[3] On the Faddahs' motion we abated the proceedings in the appeal from the May 5 decision of the Board to await the Board's disposition of the new application.

On July 26, 1976, the Board ruled that the Faddahs "failed to make a prima facie showing of eligibility for the relief sought" under section 244, and denied the motion to reopen. The July 26 order is the second order presently appealed by the Faddahs.

The parties have stipulated that the Faddahs' appeal from the May 5 order be amended to encompass also the appeal from the July 26 order. Accordingly, we proceed to decide both appeals, as we have done on past similar occasions. *Gonzalez-Cuevas v. INS*, 5 Cir., 1975, 515 F.2d 1222.

We note from the record that the Faddahs have been advised by counsel throughout these proceedings and were represented by counsel at each of their hearings.

*The Board's May 5 decision.*

■ The May 5 decision of the Board denied the Faddahs' motion to reopen to consider new evidence allegedly probative of the Faddahs' eligibility for substantial investor status. To be eligible for such status, they would have to show investment of at least $10,000 in a business in the United States. 8 C.F.R. § 212.8(b). The Board found that the Faddahs had failed to make a prima facie case of eligibility for substantial investor status and denied the Faddahs' motion to reopen.

On appeal, the Faddahs argue that their proffered new evidence did make out a prima facie case of eligibility for substantial investor status, and that the Board's decision to the contrary was clearly erroneous.

We have reviewed the Faddahs' submissions to the Board which appear in the record. They consist chiefly of invoices, cancelled checks, copies of leases, a report from the Faddahs' bookkeeper showing the amount of inventory purchased for the Faddahs' Dallas clothing store over a two-month period, and an unaudited, undocumented "Statement of Net Worth." The business records, which reflect for the most part "revolving payment and sale of inventory" are not conclusive as to investment value of a business. *Matter of Ahmad*, Interim Decision 2316 (BIA Aug. 23, 1974). As for the unsupported "Net Worth" statement, it is for the Board to evaluate its

---

**3.** Section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254, provides in pertinent part:

(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection;

has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

worth. This record contains sufficient evidence from which the Board could find that the Faddahs failed to make a prima facie case of eligibility for substantial investor status.

Even had the Board found the Faddahs qualified for statutory eligibility for substantial investor status, they would have been "merely *eligible* for adjustment of status, [but] in no way *entitled* to such relief." *Jarecha v. INS*, 5 Cir., 1969, 417 F.2d 220, 223 [emphasis in original]. The Board could have denied their motion to reopen as a matter of discretion, *id.* As already noted, the Board in its May 5 decision did say that "we adhere to our prior determination that the relief sought should be denied in the exercise of discretion." Thus the Board denied the Faddahs' motion to reopen on two grounds: statutory ineligibility and as a matter of discretion.

■ Had the Board's denial of the Faddahs' motion been based on discretion alone, it would not have been in error. In his opinion of January 2, 1974, the immigration judge found that Faddah was not a bona fide nonimmigrant at the time of entry; in other words, that he obtained a temporary visa intending to find a way to remain permanently in the United States. This finding without more would be sufficient to support discretionary refusal to grant adjustment of status under section 245. *See, e. g., Lee v. INS*, 9 Cir., 1971, 446 F.2d 881; *Ameeriar v. INS*, 3 Cir., 1971, 438 F.2d 1028, *cert. denied*, 404 U.S. 801, 92 S.Ct. 21, 30 L.Ed.2d 34; *Chen v. Foley*, 6 Cir., 1967, 385 F.2d 929, *cert. denied*, 393 U.S. 838, 89 S.Ct. 115, 21 L.Ed.2d 109; *see also INS v. Bagamasbad*, 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976); *Tuan v. INS*, 5 Cir., 1976, 531 F.2d 1337, 1338.

■ In his July 2 opinion, the immigration judge also found that Faddah had ac-

quired a proffered labor certification by "wilful misrepresentation." Finally, Faddah was warned twice from the bench by the immigration judge to file income tax returns; during this time Faddah was earning a sufficient living to support himself, his wife, and a family which increased from two to four children. Nevertheless, Faddah failed to file any federal income tax returns from the time of his arrival in 1969 until March of 1976.[4] On this record, the Board was correct in employing its discretion to deny the Faddahs' application for adjustment of status.

*The Board's July 26 decision.*

■ On July 26, 1976, the Board denied the Faddahs' application for suspension of deportation under section 244. That section provides for suspension of deportation of aliens who have resided in the United States for seven years during which time they have exhibited good moral character and whose deportation would result in extreme hardship to themselves or to a spouse, parent or child who is a United States citizen or permanent resident alien. The Board held that the Faddahs failed to make a prima facie showing of eligibility under the statute, and denied the Faddahs' motion to reopen.

On appeal, the Faddahs argue that their motion did make out a prima facie case of eligibility under section 244. It is not contested that the Faddahs have resided in this country for seven years or that two of their children are citizens of the United States by virtue of being born here. In light of the record before us, however, the Board was correct in ruling that the Faddahs failed to make a prima facie case of eligibility.

As to the hardship requirement, we note that deportation of the Faddahs will cause no family separation; *cf. Yong v. INS*, 9 Cir., 1972, 459 F.2d 1004, 1005. Neither of

---

4. In March of 1976, the Faddahs filed federal income tax returns for each year of their residence in the United States. Interestingly, the total tax paid for the entire seven-year period was only $604.33. They reported income for only three of the seven years. Nevertheless, their claimed net worth increased during that period from $6,000 which they told the immigration judge they brought with them, to the $34,409—presumably net after living expenses for a family of four which increased to six—which they claimed in their application for substantial investor status.

the Faddahs has family members in this country outside the immediate family, and the record shows that members of Mrs. Faddah's family are still living in Finland. That the minor children citizens would necessarily have to accompany their depǒrted parents does not establish the requisite hardship, e. g., *Gonzalez-Cuevas v. INS, supra*, 515 F.2d at 1224. The economic hardship asserted by the Faddahs similarly is not sufficient to show the requisite hardship under section 244. *Pelaez v. INS*, 5 Cir., 1975, 513 F.2d 303, 305.

Importantly, the factors on which the Faddahs base their claims of residence and hardship have all been developed by them since their entry into this country. In order to remain for the statutory seven years, the Faddahs at least once staved off deportation by dilatory tactics, offering the labor certification found to be bogus by the immigration judge. Almost the entire seven years can be accounted for by stays of deportation while the Faddahs availed themselves of further administrative appeals. These factors throw into serious question the satisfactory nature of the Faddahs' seven-year residence for the purpose of satisfying the statute. *Matter of Lam*, Interim Decision 2136 (BIA March 23, 1974).

The two citizen children for whom the Faddahs assert the "severe hardship" requirement of section 244 were born after the Faddahs overstayed a temporary nonimmigrant visa; one was born after the Faddahs ignored an opportunity for voluntary departure. This brings their record very close to the facts in *Gonzalez-Cuevas v. INS, supra*, where we said,

> Petitioners, who illegally remained in the United States for the occasion of the birth of their citizen children, cannot thus gain favored status over those aliens who comply with the immigration laws of this nation. Any ruling which had this effect would stand those statutes on their heads.

Petitioners' violations of the immigration laws create no extraordinary rights in them, directly or vicariously through their citizen children, to retain their illegally acquired residency status in this country while awaiting legalization of their entry and right to remain through the issuance of visas.

515 F.2d at 1224.

On this record and in light of these decisions, the Board correctly found that the Faddahs had not established the requisite hardship to be eligible for suspension of deportation under section 244.

As we have seen, section 244 also requires the applicant to make a showing of good moral character during his seven years' residence in the United States. All that we have said before concerning the propriety of the Board's exercise of discretion in denying the Faddahs relief under section 245 convinces us that the Board correctly found that the Faddahs have not shown the required good moral character for eligibility for suspension of deportation under section 244.

In sum, we have closely examined the record in this case and find that the grounds on which the Board has based its decisions are clearly reflected therein. We hold that on this record, the Board did not exceed its administrative discretion in finding that the Faddahs have not made out a prima facie case for relief under either section 244 or section 245. Accordingly, we affirm the Board's decisions of May 5, 1976 and July 26, 1976, denying the Faddahs' motions to reopen their deportation proceedings under those statutes.

AFFIRMED.