**MEN KENG CHANG, a/k/a Abraham Chang, Petitioner-Appellant,**

v.

**A. S. JIUGNI, District Director of the Immigration and Naturalization Service, Respondent-Appellee.**

No. 81–1325
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 3, 1982.

Hiram W. Kwan, Los Angeles, Cal., for petitioner-appellant.

Rebecca D. Westfall, Asst. U. S. Atty., El Paso, Tex., Francis J. Martin, Atty., Crim. Div., Appellate Sect., U. S. Dept. of Justice, Washington, D. C., for respondent-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

PER CURIAM:

Appellant Men Keng Chang is a 53-year-old native of the People's Republic of China and a citizen of Taiwan. He entered the United States on September 8, 1972, as a nonimmigrant visitor authorized to remain for business purposes until December 8, 1973. On March 18, 1974, the Immigration and Naturalization Service ("INS") issued an order for appellant to show cause why he should not be deported as an overstay. A deportation hearing was held before an immigration judge ("IJ") in Baltimore on April 16, 1976. Appellant appeared at this hearing unrepresented by counsel; he was found deportable as charged and was denied voluntary departure. The IJ also denied appellant's request for a change of status to permanent resident under 8 U.S.C. § 1255.

Chang filed a notice appealing the IJ's deportation order with the Board of Immigration Appeals ("the Board"). In his notice he alleged that he was confused at the hearing before the IJ and that "the interpreter stopped talking." He also complained that he was not given the opportu-

nity to explain his position and that the IJ was yelling at his witness. Chang then secured the services of an attorney to assist him in the appeal. Before the attorney was able to examine the complete record and exhibits in the case the Board affirmed the IJ's decision and dismissed the appeal without opinion. Counsel then filed with the Board a motion to reopen the deportation hearing, and the motion was denied. In the meantime, Chang had moved from Baltimore to Philadelphia and then later to Los Angeles. Appellant left a forwarding address with his attorney but apparently was never informed of the outcomes of his appeal and motion to reopen. A letter issued to appellant by the INS arranging for his deportation was returned as undeliverable.

Since 1977 Chang has resided in Los Angeles; at present he works as a Chinese chef earning $18,000 per year. On November 8, 1979, his wife gave birth to twin daughters in California; the children are United States citizens by virtue of having been born in this country.

On August 13, 1980, appellant was returning to Los Angeles by bus from San Antonio, Texas. The bus in which he was riding made a routine stop in a small New Mexico town at about 3:00 a.m. Immigration officers boarded the bus and began questioning passengers. Chang identified himself and produced certain immigration papers. The officers left the bus but reboarded a few minutes later, advised appellant of the outstanding deportation order against him, and placed him under arrest. He was later placed in the INS detention facility in El Paso, Texas.

On August 28, 1980, Chang filed an application to stay and suspend his deportation under section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254. His application was based on his seven years of continuous residence in the United States, the birth of his twin U.S. citizen daughters, certain health reasons, and his sixth preference visa petition. The application was denied on September 9, 1980, by the Board of Immigration Appeals.

On October 7, 1980, Chang filed a petition for federal habeas corpus relief. On October 16, 1980, the district court enjoined the INS from deporting appellant pending final resolution of his case. The district court held a hearing on April 17, 1981, and denied appellant's application for habeas relief on May 13. Chang now appeals this denial.

*Fairness of the Deportation Hearing*

On appeal, Chang attacks the fairness of his April 1976 deportation hearing before the IJ on two grounds: (1) that he did not knowingly and intelligently waive his right to counsel at the hearing and (2) that the IJ's denial of voluntary departure was arbitrary and capricious.

■ Appellant is precluded from raising these contentions at this late date. Although this court is empowered to review both final deportation orders and motions to reopen, a petition for review must be filed within six months of the date of the order to be reviewed. 8 U.S.C. § 1105a(a)(1); *Gena v. INS*, 424 F.2d 227, 231 (5th Cir. 1970). Here the Immigration Board affirmed the IJ's decision ordering deportation on June 4, 1976; the motion to reopen was denied by the Board on October 4, 1976. No notice of appeal was filed within six months of either of these orders.

Appellant maintains that he never received notice of the Board's actions from his attorney because he had moved during that time, although he had left forwarding addresses with the attorney. The record shows that a letter sent to Chang from the INS was returned as undeliverable. Appellant argues that he should not be faulted for failure to file a timely notice when his attorney never informed him of the results of the Board's actions.

■ Federal regulations expressly provide that in alien cases before the INS service of notice *shall* be made upon the alien's attorney if he is represented by counsel. 8 C.F.R. § 292.5 (1981). This regulation was in effect in 1976 at the time of appellant's appeal to the Board. 8 C.F.R. § 292.5 (1976). Thus, service upon appellant's counsel here was effective to consti-

tute notice to appellant. Therefore, because of the untimeliness of the challenge, this court cannot consider Chang's complaints regarding the deportation hearing. *Aguilar v. INS*, 638 F.2d 717, 718 n.1 (5th Cir. 1981).

*Denial of Motion to Reopen Deportation Hearing*

Appellant's next contention is that the Board of Immigration Appeals abused its discretion in denying his August 28, 1980, application to stay and suspend his deportation. Section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1), provides for suspension of deportation and adjustment of status of an otherwise deportable alien who (1) has been physically present in the United States for not less than seven years; (2) is a person of good moral character; and (3) is "a person whose deportation would ... result in extreme hardship to the alien or to his spouse, parent or child who is a citizen of the United States or an alien lawfully admitted for permanent residence." Appellant's August 1980 application sought to reopen his original deportation proceedings on the basis of circumstances that had developed after the original deportation order. *See* 8 C.F.R. § 3.2 (1980). His application was based on four changed circumstances.

■■ First, appellant argues that he has now resided in the United States for over seven years, having entered this country in 1972. In considering this fact, the Immigration Board noted that appellant had "managed to escape deportation and accrue the minimum statutory period of physical presence only by absconding after notice of his final order of deportation." Evasion of deportation to achieve the seven-year period is a proper factor for the Board to consider. *Faddah v. INS*, 553 F.2d 491, 496 (5th Cir. 1977).

Second, appellant cites the birth of his twin daughters who are U.S. citizens by virtue of their birth in California. These children were born on November 8, 1979, making them scarcely more than two years old at present. The district court noted

that the appellants "claim of 'extreme hardship' to his two children who are U.S. citizens is frivolous in that said children presently live in Taiwan with their mother and have lived there for the majority of their lives." The Immigration Board rejected appellant's argument that his deportation would create an "extreme hardship" to his twin daughters as unsubstantiated and conclusionary. Although one may be sympathetic to appellant's argument that the children would benefit by growing up in the United States, this argument is foreclosed by a long line of authority. *Aguilar v. INS*, 638 F.2d at 719; *Faddah v. INS*, 553 F.2d at 496; *Gonzalez-Cuevas v. INS*, 515 F.2d 1222, 1224 (5th Cir. 1975). *See INS v. Wang*, 450 U.S. 139, 144–46, 101 S.Ct. 1027, 1031–32, 67 L.Ed.2d 123 (1981).

Third, appellant maintains that his medical condition would make it an extreme hardship for him to be deported. The record shows that while Chang was detained at the INS facility in El Paso he suffered a variety of health problems—leg and chest pains, high blood pressure, headaches, shortness of breath, and edema—necessitating frequent visits to the hospital. The Immigration Board, in denying relief from deportation, stated that appellant's medical problems did not "appear to be of any great magnitude as to warrant reopening for humanitarian reason[s]." This finding is not an abuse of discretion on the Board's part, as none of the health problems seems to be the type of condition for which appellant could not receive treatment in Taiwan. Moreover, the record reflects that some of appellant's medical problems were probably the result of the initial stress at being incarcerated in the INS detention center.

■ Finally, Chang argues that deportation would create an economic hardship. Because of his nine-year absence from Taiwan, appellant contends that it would be difficult for him to return there at age 53 and find suitable employment to support his family. In connection with this contention, appellant points out that he has received an approved sixth preference visa petition that would permit a change of status to perma-

nent resident. Although appellant presented this argument to the Immigration Board, the Board did not specifically respond to it in its opinion denying suspension of deportation. It is well established, however, that economic hardship alone does not mandate the granting of relief to an otherwise deportable alien. *INS v. Wang*, 450 U.S. at 142, 101 S.Ct. at 1030–31; *Aguilar v. INS*, 638 F.2d at 719; *Chokloikaew v. INS*, 601 F.2d 216, 218 (5th Cir. 1979); *Faddah v. INS*, 553 F.2d at 494–95. Thus, it does not appear that appellant has satisfied the "extreme hardship" requirement contemplated by 8 U.S.C. § 1254(a)(1) or that the Immigration Board abused its discretion in denying relief from deportation due to changed circumstances.

*Fourth Amendment Claim*

Chang's final contention is that his fourth amendment rights were violated when immigration officers boarded the bus in New Mexico and began questioning him about his residency status, leading to his arrest and detention. Appellant attempts to fit the circumstances of his arrest within the scope of *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), and *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), and their progeny. Briefly, appellant contends that the initial decision by immigration officials was not made in conformity with the requirements of probable cause or reasonable suspicion required in border search cases.

Appellant's reliance on the border search cases is misplaced. He does not seek to invoke the exclusionary rule to suppress any evidence or fruits that resulted from the search. Rather, he contends that the district court should have granted his application for habeas relief because his arrest and detention were in violation of his fourth amendment rights. He suggests that any statements made by him regarding his alien status and that his immigration papers should have been suppressed. He does not, however, point out what these statements or papers are, nor does the record contain any clue about specific statements and papers being used against appellant.

■ Appellant voluntarily gave information to the immigration officers, and they did not arrest him until returning several minutes later. In addition, the stop occurred in an area where frequent stop-checks for aliens are conducted. It is unclear from the record whether the stop occurred in Truth or Consequences, New Mexico, or in Lordsburg, New Mexico, or whether it occurred at a permanent checkpoint or at a commercial bus station. If the stop was at Truth or Consequences at the designated permanent checkpoint, then the search and arrest of appellant was permissible even in the absence of any reasonable suspicion to warrant stopping the bus. *See United States v. Martinez-Fuerte*, 428 U.S. at 566–67, 96 S.Ct. at 3086–87; *United States v. Sarduy*, 590 F.2d 1355, 1356 (5th Cir. 1979).

■ Appellant's argument can be summarized: the immigration agents had no reason to stop the bus; had they not done so, appellant would not now be under arrest. The Supreme Court has rejected exactly this type of argument, holding that "an illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980). In other words, appellant himself is not a "suppressible fruit" and cannot complain of his arrest on that ground. *Id.*

The judgment of the district court is AFFIRMED.