577 F.2d 589
 Erodina URBANO de MALALUAN, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 76-3120.
 United States Court of Appeals,
Ninth Circuit.
 June 27, 1978.
 
 Sidney Broffman, Los Angeles, Cal., for petitioner.
 Michael E. Wolfson, Asst. U.S. Atty., Los Angeles, Cal., for respondent.
 On Petition for Review of Deportation Order of the Immigration and Naturalization Service.
 Before KENNEDY and HUG, Circuit Judges, and JAMESON*, Senior District Judge.
 HUG, Circuit Judge:
 
 
 1
 Petitioner Erodina Urbano de Malaluan is a native and citizen of the Philippines who entered the United States on January 21, 1969 as a nonimmigrant visitor for an authorized stay of 30 days. At the time, she was a single woman, 26 years of age, who had entered for the purpose of visiting her two sisters and a brother who were United States citizens. Petitioner stayed beyond the 30 days. The Immigration and Naturalization Service commenced deportation proceedings on the ground that she had remained in the United States beyond the time authorized. A hearing was held on March 26, 1969 before an immigration judge who found petitioner deportable, but granted her the privilege of voluntary departure. Petitioner appealed the immigration judge's order to the Board of Immigration Appeals, which affirmed the order on July 24, 1969, extending the voluntary departure privilege to August 23, 1969.
 
 
 2
 The petitioner did not voluntarily depart the United States and continued to remain after the August 23, 1969 date. It then became the duty of the Immigration and Naturalization Service to effectuate the deportation by the issuance of a warrant and notification to the petitioner of the time and place she was to report for departure from the United States. Although the petitioner continued to remain in the United States, the Immigration and Naturalization Service did not communicate with her or take steps to effectuate her departure for six and one-half years.
 
 
 3
 During the intervening years, petitioner married and had two children, both born in the United States. She continued working as a secretary for Carte Blanche, Inc., a job she had held since March 4, 1969. She and her husband purchased a home in Los Angeles and, with their family, became part of the community. There is no indication that she attempted to conceal her identity or whereabouts.
 
 
 4
 On February 18, 1976, the Service communicated with petitioner for the first time, requesting that she report to its office for departure from the United States on March 18, 1976. Petitioner then filed a motion to reopen the deportation proceedings to permit her to apply for suspension of deportation pursuant to § 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C., § 1254(a)(1).[1]
 
 
 5
 Section 244 of the Act provides that the Attorney General may, in his discretion, suspend deportation of the alien and adjust his or her status to that of an alien admitted for permanent residence, provided certain conditions of eligibility are met.[2] To be eligible for the exercise of this discretion, the alien must establish: (1) physical presence in the United States for a continuous period of not less than seven years preceding the date of application; (2) good moral character during all such period; and (3) that the deportation would result in extreme hardship to the alien or to his or her spouse, parent or child who is a citizen of the United States or an alien lawfully admitted for permanent residence.
 
 
 6
 The Service filed a brief in opposition to the motion to reopen and petitioner responded. On September 1, 1976, the Board of Immigration Appeals, on the basis of the written record, entered its order as follows:
 
 
 7
 PER CURIAM. The respondent moves to reopen the proceedings to apply for suspension of deportation. The respondent has failed to make a prima facie showing of eligibility for the relief sought. Matter of Sipus, Interim Decision 2172 (BIA 1972); Matter of Lam, Interim Decision 2136 (BIA 1972). Accordingly, this motion is denied.
 
 
 8
 Pursuant to Title 8 U.S.C., § 1105a, petitioner timely filed a petition for review by this court of that order of the Board.
 
 
 9
 This court has jurisdiction to review the denial of a motion to reopen deportation proceedings. Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964). The proper inquiry on review by this court is whether the denial of the motion to reopen was an abuse of discretion. Velasquez Espinosa v. Immigration & Naturalization Service, 404 F.2d 544 (9th Cir. 1968).
 
 
 10
 Applications for suspension of deportation under § 244(a)(1) of the Act are normally required to be filed as a part of the initial deportation proceedings before the immigration judge and are foreclosed if not brought at that time. However, where circumstances change after the entry of the deportation order, the alien is permitted to petition to reopen the proceedings to seek the discretionary relief. The motion to reopen is addressed to the immigration judge for determination if the order of deportation has not been appealed. However, if the order of deportation has been appealed and a decision made by the Board, as in this case, jurisdiction lies with the Board to rule upon the motion to reopen. 8 C.F.R. § 3.2 and 8 C.F.R. 242.22.[3]
 
 
 11
 It is not the function of the Board at this stage of the proceedings either to make a determination of the eligibility of the alien under § 244 or to exercise the discretion provided for in § 244; rather, it is the function of the Board to make a determination as to whether the alien has set forth a prima facie case for eligibility for relief under § 244.
 
 
 12
 In the event that the Board enters an order to reopen the deportation proceedings, the matter should be referred to the immigration judge for a hearing to determine the alien's eligibility for relief under § 244. Then, if the alien is found to be eligible, the immigration judge would exercise the discretion provided for by that section. The matter could then be appealed or certified to the Board of Immigration Appeals for a final decision.
 
 
 13
 It was obviously the intent of Congress, in enacting § 244, that where eligibility exists, the Attorney General or his designee should exercise discretion as to whether deportation should be suspended. The determination of the Board as to whether to reopen the deportation proceedings is not made on the basis of any hearing, but rather on the basis of the moving papers, together with affidavits or other evidence submitted in support thereof. Therefore, the determination by the Board must be limited to the question of whether or not a prima facie case for eligibility under the Act exists. If a prima facie case of eligibility does exist, it would be an abuse of discretion for the Board not to reopen the deportation proceeding to allow a hearing by the immigration judge to determine whether or not eligibility does, in fact, exist; and, if it does, to permit the immigration judge to exercise the discretion provided for in the statute. The decision of the immigration judge may then be appealed to the Board of Immigration Appeals upon the record developed. 8 C.F.R. § 3.1(b)(2).
 
 
 14
 The brief order of the Board of Immigration Appeals in this case does not state the reason for its ruling that a prima facie case does not exist. The Board merely cites two prior decisions of the Board of Immigration Appeals. In each case, the fact situation was quite different from that of petitioner Malaluan. In neither case cited was the disruption of a family, including United States citizen children, involved. In each case cited, the allegation of hardship was based solely upon economic detriment because the alien would be unable to find equivalent employment. There was no consideration of hardship to children who were United States citizens.[4] The reason for the Board's finding can only be adduced from its brief order. It is apparent from the moving papers of the petitioner that she has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of the application. She also provides evidence that she has been, during all of said period, a person of good moral character. There is no evidence in the record that would indicate to the contrary and the Service did not contest this issue. Therefore, the only basis upon which the Board's order could have been grounded is that the petitioner failed to meet the third requirement, that she be a person whose deportation would, in the Attorney General's opinion, result in extreme hardship to the alien or to her spouse, parent, or child, who is a citizen of the United States.
 
 
 15
 The motion of petitioner to reopen incorporates an application for the suspension of deportation, on the form provided by the Service, which is attached thereto with supporting documents. The application states that the deportation would result in hardship to herself and to her two United States-born children. The application further reveals that, in addition to her husband and children, a number of other members of the petitioner's family also reside in the Los Angeles area. The mother and brother of the petitioner are permanent residents living in Los Angeles. One sister, although not a permanent resident, is also living in Los Angeles. Two sisters and one brother, who are citizens of the United States, are residing in other cities in California. The application further reveals that petitioner and her husband are both employed in California and that the children were five years, four months old and one year, two months old at the time of the Board's order. There is a strong inference of hardship to petitioner and her children from the fact situation itself.
 
 
 16
 It is the contention of the Immigration and Naturalization Service that the petitioner failed to provide sufficient evidence that the deportation would result in extreme hardship to her or her children. The position of the Service is that the petitioner must go further to set forth specifically the hardship which would be incurred. We disagree. At this stage of the proceeding, the evidence which has been adduced from the moving papers and supporting documents sufficiently meets the requirements of a prima facie case.
 
 
 17
 It is acknowledged that economic hardship alone is not enough to sustain a finding of extreme hardship under the statute, Kasravi v. INS, 400 F.2d 675 (9th Cir. 1968). This does not mean that this factor is to be entirely eliminated from consideration. Certainly this can be considered along with other factors in determining whether the statutory requirement of "extreme hardship" has been met. The separation of the petitioner from members of her family who are United States citizens must be considered in conjunction with economic detriment in reaching the eligibility decision. Yong v. INS, 459 F.2d 1004 (9th Cir. 1972). Citizen children of the alien are among the members of the family who are to be considered under § 244. It is frequently stated that the fact that the petitioner has children who were born in the United States does not, in itself, justify suspension of deportation. This bears analysis, in that there are two distinct arguments which have been put forward by aliens who have a child born in the United States. The first is that the deportation order would amount to a de facto deportation of the child and thus violate the constitutional rights of the child. This argument has been authoritatively rejected in numerous cases. Rubio de Cachu v. INS, 568 F.2d 625 (9th Cir. 1977); Mamanee v. INS, 566 F.2d 1103 (9th Cir. 1977); Davidson v. INS, 558 F.2d 1361 (9th Cir. 1977); Lee v. INS, 550 F.2d 554 (9th Cir. 1977); Gonzalez-Cuevas v. INS, 515 F.2d 1222 (5th Cir. 1975). One of the principal reasons advanced for the rejection of this argument is that it would permit a wholesale avoidance of immigration laws if an alien were to be able to enter the country, have a child shortly thereafter, and prevent deportation. This argument would apply irrespective of § 244.
 
 
 18
 The second argument concerns the extent of consideration to be given to the citizen children of the alien under § 244 because of the direction of the statute that hardship to the children is a factor to be evaluated.
 
 
 19
 In the discretionary suspension of deportation under § 244, the situation is quite different, in that the alien is required to be in the United States for at least seven years before being eligible for the relief. The opportunity to evade the immigration laws is greatly diminished. It should be noted that the focus of § 244 is not upon the mere existence of children of the alien who are United States citizens, but rather a discretionary review of the hardship that would be inflicted upon those citizens. The Attorney General or his designee, under the statute, is to consider the hardship, not only upon the alien herself, but upon the children of the alien who are United States citizens.
 
 
 20
 The effect that the deportation of the mother would have on the children in these circumstances would be most difficult to discern without a hearing. It is the hardship imposed upon both the petitioner and the children which must be evaluated.
 
 
 21
 The petitioner has brought to the attention of this court a 1977 decision of the Board of Immigration Appeals, as yet unpublished, Arlington Earl Bodden and Maureen Eleanor Bodden, Immigration File Nos. Adr-ore-hpz and Ajs-xts-eif, respectively, which strongly indicates the necessity for a hearing in this case. The aliens there were found deportable upon their own admission, and their applications for suspension of deportation under the provisions of § 244(a)(1) were denied by the immigration judge. The Boddens appealed the decision to the Board of Immigration Appeals. Both of the Boddens were employed in the Los Angeles area, they owned their own home and they had two children who were American citizens, aged 9 and 7, a situation quite similar to that of petitioner Malaluan. The Board of Immigration Appeals stated in that opinion:
 
 
 22
 The question in this case is whether the respondents or their two United States citizen children would suffer "extreme hardship" if they were compelled to leave this country.
 
 
 23
 "Extreme hardship" is not a definable term of fixed and inflexible content, but necessarily depends upon the facts and circumstances peculiar to each case. . . .
 
 
 24
 In this case we are dealing not with a single alien, but with an entire family. The family includes two United States citizen children who are no longer mere infants. . . .
 
 
 25
 In ten years time, the family had become thoroughly rooted in America. This naturally has a direct bearing on the degree of hardship they would suffer if compelled to leave. This case involves far more than economic hardship. We think that the combination of uprooting, cultural shock, forced liquidation of business and home, substantially diminished educational and economic opportunities, and the improbability that they could immigrate to this country legally, would impose an "extreme hardship" on the entire family.
 
 
 26
 The respondents are therefore eligible for suspension of deportation. We find they plainly merit the relief.
 
 
 27
 Thus the original decision of the immigration judge was reversed and deportation of the aliens in that case suspended under the provisions of § 244(a)(1). The circumstances of petitioner Malaluan are very similar to those of the Boddens. In the Bodden case, the Board not only found the petitioner eligible, but went on to exercise its discretion and suspend deportation. The Board's decision that Malaluan has not even made a prima facie case sufficient to reopen the deportation proceedings cannot be sustained. Petitioner has presented a prima facie case. The deportation proceedings of petitioner should be reopened to permit an application for suspension of deportation under § 244[5] and a hearing thereon.
 
 
 28
 The order of the Board of Immigration Appeals is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.
 
 KENNEDY, Circuit Judge, dissenting:
 
 29
 The majority relies upon an Immigration and Naturalization Service case which can be distinguished from Malaluan's situation and ignores a prior case of this court which cannot.
 
 
 30
 The majority cites Arlington Earl Bodden and Maureen Eleanor Bodden, Immigration File Nos. Axl-foc-uyd and Apv-qcm-cuq, as authority for its decision. That I&NS decision differs from this case for reasons which are not obvious from the court's opinion. Here, all of the changes in circumstances which, the petitioner alleges, would make deportation an extreme hardship were changes that occurred while petitioner knew an order for her deportation was outstanding. The petitioners in the Bodden case, however, were not under deportation orders at any time in the ten years of their United States residence during which they formed the cultural, economic, and familial ties with this country that the Service cited as grounds for a suspension of deportation.
 
 
 31
 In my view, this case is controlled by Lee v. Immigration and Naturalization Service, 550 F.2d 554 (9th Cir. 1977), which the majority purports to distinguish in footnote 5 of its opinion. The facts presented here differ from those in Lee only in that Malaluan has two citizen children whereas Lee had only one, and in that Malaluan has a mother and brother who are permanent United States residents. These are differences of degree, not of kind. The court in Lee held that the "possibility of inconvenience to the citizen child is not a hardship of the degree contemplated by the statutory language of extreme hardship." 550 F.2d at 556. Given this standard it hardly follows that inconvenience to two children should count for more than inconvenience to one child. Malaluan did not allege specific detriment, for example, interruption of her children's education, which would result from her deportation. I cannot agree that the Board abused its discretion in failing to distinguish this case from Lee. Although immigration cases, such as this one, often present sympathetic fact situations, we are nonetheless bound by statutory standards of review as well as by the law of this circuit. I therefore dissent from the judgment of the court.
 
 
 
 *
 Hon. William J. Jameson, Senior Judge, United States District Court for the District of Montana, sitting by designation
 
 
 [1]
 Title 8 U.S.C. § 1254(a)(1) reads as follows:
 § 1254. Suspension of deportation Adjustment of status for permanent residence; contents
 (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and
 (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence; . . .
 
 
 [2]
 This Attorney General has delegated his authority to exercise this discretion to special inquiry officers with review by the Board of Immigration Appeals, 8 C.F.R. § 244.1 and 8 C.F.R. § 3.1, which delegation was upheld as appropriate in Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1955). The special inquiry officers are now known as immigration judges. 8 C.F.R. § 1.1(1)
 
 
 [3]
 8 C.F.R. § 3.2 provides:
 Reopening or reconsideration of any any case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written motion to the Board. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing. . . .
 
 
 [4]
 In Matter of Lam, supra, cited by the Board, the alien petitioner's allegation of extreme hardship consisted in substance only of the economic hardship which would be suffered by his inability to find an equivalent job in Hong Kong, where he was being sent. In the other case cited by the Board Matter of Sipus, supra, the petitioner was a domestic employed in the United States, but her husband and children all lived in the Philippines where he was employed. Her only contention of hardship was the inability to find equivalent employment in the Philippines. The Board noted that in this case the deportation would not separate the family, but unite it, and further noted that mere economic detriment, without more, is not enough to make out the extreme hardship required by the statute, citing Kasravi v. INS, 400 F.2d 675 (9th Cir. 1968)
 
 
 [5]
 This court, in the case of Lee v. INS, 550 F.2d 554 (9th Cir. 1977), found no abuse of discretion by the Board in failing to reopen a deportation proceeding for a suspension application, where there were conditions of economic hardship and the alien father had a three-year old citizen child. The case is distinguishable on the facts, since in this case there are two children, one of school age, and additional family ties in the country, with several close relatives living here. More significantly, the Board of Immigration Appeals has, since the Lee case, evidenced, by its decision in the Bodden case, that it will grant discretionary relief in similar circumstances, even to the extent of reversing the immigration judge. Thus the existence of very similar circumstances in this case must constitute at least a sufficient basis to reopen the deportation proceedings to allow a hearing to consider the hardship involved. The failure to reopen was thus an abuse of discretion