**Domingo BASTIDAS, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 78–2571.**

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1979.

Decided Oct. 30, 1979.

Louis Vaira, (argued), Pittsburgh, Pa. for petitioner.

Chester J. Halicki (argued), Government Regulations & Labor Section, Dept. of Justice, Crim. Div., Washington, D. C., Robert S. Forster, Jr., Philip Wilens, James P. Morris, Washington, D. C., for respondent.

Before ADAMS, VAN DUSEN and HUNTER, Circuit Judges.

JAMES HUNTER, III, Circuit Judge.

This is a petition by Domingo Bastidas seeking review by this court of the determination by a special inquiry officer of the Immigration and Naturalization Service, subsequently approved by the Board of Immigration Appeals, that Bastidas was statutorily ineligible for suspension of deportation. Petitioner Bastidas's deportation will result in the permanent separation of Bastidas and his two young children from each other. Because we find that the special inquiry officer gave insufficient consideration to the non-economic hardship which would result from Bastidas's deportation and because the Board of Immigration Appeals relied on a mistaken understanding of the applicable case law in approving the determination of the special inquiry officer, we will vacate the order denying suspension of deportation and remand this case to the Board of Immigration Appeals for further proceedings consistent with this opinion.

## I.

Domingo Bastidas is a native and citizen of Colombia who entered the United States on July 27, 1968 as a nonimmigrant visitor authorized to remain in this country until October 30, 1968. On September 27, 1968 his status was changed to that of a nonimmigrant student authorized to stay until November 1, 1972. Bastidas learned English and spent a year studying at the New York Motel and Hotel School where he received degrees in dietetics and hotel management. He has been employed in the field of hotel management since November of 1969 and has been employed as an assistant manager of the William Penn Hotel in Pittsburgh, Pennsylvania, since November of 1975.

On July 21, 1973 Bastidas married Rhoda Day, a United States citizen. The marriage was the first for each of them. They now have two children: a four and a half year old son and a one and a half year old daughter.

On November 21, 1973 Bastidas's wife filed a visa petition on his behalf. The petition was approved on May 23, 1974. However, in response to a divorce action which Bastidas filed against his wife on July 5, 1977, she withdrew the petition which she had filed on his behalf. As a result of the withdrawn petition, Bastidas's application for a change of status to that of a permanent resident was denied and he was ordered to leave the United States by October 30, 1977 without the initiation of formal deportation proceedings. He failed to leave and on November 7, 1977 an order to show cause was issued charging him with

being an overstay. At the show cause hearing, which was held on November 21, 1977, Bastidas conceded deportability but sought to avoid deportation by applying for a suspension of deportation. On November 22, 1977 the special inquiry officer who conducted the show cause hearing denied Bastidas's application for suspension of deportation finding that Bastidas did not establish extreme hardship and was therefore statutorily ineligible for suspension of deportation. On November 16, 1978 the Board of Immigration Appeals dismissed Bastidas's appeal of the decision of the special inquiry officer. Bastidas has petitioned this court for review of the denial of suspension of deportation.

## II.

Section 244(a)(1) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1254(a)(1) (1976), authorizes the Attorney General, in his discretion, to suspend the deportation of an alien and to adjust that alien's status to that of an alien lawfully admitted for permanent residence in the case of an alien who applies to the Attorney General for suspension of deportation and who satisfies three statutory requirements. First, the alien must have been present in the United States for a continuous period of not less than seven years immediately preceding the date of the application for suspension of deportation. Second, the alien must show that he is of good moral character. Third, and most important to the disposition of this case, the alien must be a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child who is a citizen of the United States.[1]

■ Since the special inquiry officer's determination of statutory ineligibility for suspension of deportation was made in the course of a hearing conducted pursuant to § 242(b) of the Act, 8 U.S.C. § 1252(b) (1976), it is reviewable by this court as a final order of deportation under § 106 of the Act, 8 U.S.C. § 1105a (1976). *Foti v. Immigration and Naturalization Service*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).[2]

1. Section 244(a)(1) of the Act, provides:
   (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—
   (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. . . .
   In accordance with the powers of delegation given to the Attorney General by § 103 of the Act, 8 U.S.C. § 1103 (1976), the Attorney General issued regulations delegating his authority under § 244 to the Commissioner of Immigration and Naturalization. 8 C.F.R. § 2.1 (1979). The Commissioner, in turn, issued regulations redelegating his authority to special inquiry officers whose decisions are subject to review by the Board of Immigration Appeals. 8 C.F.R. §§ 242.8, 242.21 (1979). Delegation of the authority given to the Attorney General by § 244 has been upheld by the Supreme Court. *Kimm v. Rosenberg*, 363 U.S. 405, 408, 80 S.Ct. 1139, 1141, 4 L.Ed.2d 1299, 1301 (1960); *Jay v. Boyd*, 351 U.S. 345, 351, 76 S.Ct. 919, 923, 100 L.Ed. 1242, 1250 (1956).

2. In *Foti*, as in this case, petitioner conceded deportability at a show cause hearing conducted by a special inquiry officer and applied for suspension of deportation. The Supreme Court held that denials of suspension of deportation were reviewable as final orders of deportation under § 106(a) of the Act. Subsequently, in a brief *per curiam* opinion, the Court extended *Foti* by holding that the denial of a motion to reopen proceedings which were conducted under § 242(b) was, like the denial of suspension of deportation in *Foti*, reviewable under § 106(a). *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964). Most recently, the Court held that § 106(a) did not confer jurisdiction to review a denial of a stay of deportation when the denial was not entered in the course of a proceeding conducted under § 242(b). *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968).

■ Although the decision whether to suspend the deportation of an individual who satisfies the three statutory requirements of § 244(a)(1) is discretionary and can only be overturned for an abuse of discretion, *Foti v. Immigration and Naturalization Service, supra,* 375 U.S. at 228, 84 S.Ct. at 313, 11 L.Ed.2d at 289; *Yeung Ying Cheung v. Immigration and Naturalization Service,* 422 F.2d 43, 46 (3d Cir. 1970), the determination whether an individual has satisfied the statutory requirements in the first place must be "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Immigration and Nationality Act, § 106(a)(4), 8 U.S.C. § 1105a(a)(4) (1976). *Wong Wing Hang v. Immigration and Naturalization Service, supra,* 360 F.2d 715, 717 (2d Cir. 1966) (Friendly, J.). *See Foti v. Immigration and Naturalization Service, supra,* 375 U.S. at 228–29 & n.15, 84 S.Ct. at 313–14 & n.15, 11 L.Ed.2d at 289–90 & n.15. Under this standard of review, the courts may not determine the substantiality of the evidence by looking solely to evidence which supports a finding, but rather they "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456, 467 (1951).

Although the special inquiry officer found that Bastidas had satisfied both the seven year continuous presence and the good moral character requirements of § 244(a)(1), he determined that Bastidas's deportation would not result in extreme hardship either to Bastidas or to Bastidas's wife or young son.[3] As a result, he found that Bastidas was statutorily ineligible for suspension of deportation under § 244(a)(1). We need not reach the question whether the special inquiry officer's finding that Bastidas did not establish extreme hardship is supported by substantial evidence on the record considered as a whole, since we find that the special inquiry officer gave insufficient consideration to the non-economic hardship which would result from Bastidas's deportation.

## III.

During the deportation hearing, the special inquiry officer asked Bastidas's wife whether it would be a hardship on either her or their child if Bastidas were forced to leave the country. She replied: "I don't believe it will. I've written out a budget. It's going to be tight but I can make it." Cert.Ad.Rec. at 26. Her response clearly demonstrates that she understood hardship for purposes of the question posed to her to include only economic and not emotional hardship. Nonetheless, the special inquiry officer did not question her as to the foreseeable emotional impact of Bastidas and his young son being permanently separated from one another.

When the special inquiry officer questioned Bastidas about his wife's testimony that his deportation would not be a hardship on his wife or their child, he disagreed and added that it would be a hardship on himself as well. In addition to noting the obvious economic and relocation problems which would result from his deportation, he stated that his deportation would be a serious hardship to both himself and his child due to their separation from each other. In his own words: "I'm losing a son—I love that son very much." *Id.* at 33–34.

The indicia of his affection for his son are well documented on the record. Apparently, the family court hearing his divorce proceedings granted him visitation rights. When questioned how often he saw his child, he replied: "Everytime I have a day off—every week." *Id.* at 32. And when questioned how much time he spent with his child when he saw him, he replied: "I spend the whole day. I go from eleven in the morning and I leave at 8 or 9 o'clock at night." *Id.* Even his wife, who had tried to bring about his deportation by withdrawing the visa petition she had previously filed on his behalf, admitted the truth of his statements when questioned as to their veracity.

3. At the time of the deportation hearing, Bastidas's son was two years old and his wife was pregnant with his daughter.

Although a survey of existing case law fails to reveal any case like this which presents the separation of a parent and a child from each other for purposes of a determination of extreme hardship pursuant to § 244(a)(1), the existing case law uniformly emphasizes the importance of the question of the separation of family members from each other for purposes of a § 244(a)(1) extreme hardship determination.

In *Yong v. Immigration and Naturalization Service*, 459 F.2d 1004 (9th Cir. 1972), the court reversed an order of the Board of Immigration Appeals dismissing an appeal from a denial of an application for suspension of deportation noting that "deportation would separate petitioner from her husband who is lawfully within the United States as a student." 459 F.2d at 1005. In reversing the Board's order, the court properly observed that "[s]eparation from one's spouse entails substantially more than economic hardship." *Id.* In *Faddah v. Immigration and Naturalization Service*, 553 F.2d 491 (5th Cir. 1977), the court approved a finding of no extreme hardship, in part, because "deportation of the Faddahs will cause no family separation." 553 F.2d at 495. Most recently, in *Urbano de Malaluan v. Immigration and Naturalization Service*, 577 F.2d 589 (9th Cir. 1978), the court reversed an order of the Board of Immigration Appeals denying a motion to reopen deportation proceedings emphasizing that "[t]he separation of the petitioner from members of her family who are United States citizens must be considered in conjunction with economic detriment in reaching the eligibility decision." 577 F.2d at 594.

■ The family and relationships between family members occupy a place of central importance in our nation's history and are a fundamental part of the values which underlie our society. *See Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Accordingly, we view the separation of family members from one another as a serious matter requiring close and careful scrutiny. Although we do not go so far as to hold that the separation of a father from his child is, as a matter of law, extreme hardship for purposes of § 244(a)(1), we do hold that where a father expresses deep affection for his child and where the record demonstrates that his actions are consistent with and supportive of his expression of affection, a finding of no extreme hardship will not be affirmed by this court unless the reasons for such a finding are made clear.

■ The decision of the special inquiry officer denying Bastidas's application for suspension of deportation addresses the economic hardship which would result from his deportation. However, the decision is silent as to the non-economic, emotional hardship which would result from the separation of Bastidas and his young son from each other. After a careful examination of the transcript of the deportation hearing and the special inquiry officer's decision, we find that the special inquiry officer gave insufficient consideration to the non-economic hardship which would result from Bastidas's deportation.

## IV.

Moreover, apart from our determination that the special inquiry officer gave insufficient consideration to the non-economic hardship which would result from Bastidas's deportation, we find that the Board of Immigration Appeals relied on a mistaken understanding of the applicable case law in approving the decision of the special inquiry officer. In its decision, the Board cited *Faddah v. Immigration and Naturalization Service, supra,* in which the court upheld a finding of no extreme hardship in part because deportation of the petitioners would not result in the separation of family members, for the proposition that "[a] claim that deportation will separate an alien from family ties in the United States is generally not sufficient to demonstrate extreme hardship." Cert.Ad.Rec. at 4. As we discussed earlier, the existing case law uniformly emphasizes the importance of the question of the separation of family members from each other for purposes of a § 244(a)(1) extreme hardship determination.

## V.

In conclusion, because we find that the special inquiry officer gave insufficient consideration to the non-economic hardship which would result from Bastidas's deportation and because the Board of Immigration Appeals relied on a mistaken understanding of the applicable case law in approving the determination of the special inquiry officer, we will vacate the order denying suspension of deportation and remand this case to the Board of Immigration Appeals for further proceedings consistent with this opinion.[4]

---

4. We note that upon a finding of statutory eligibility for suspension of deportation under § 244(a)(1), the exercise of discretion by the Attorney General's designee is required. *Unit-* *ed States ex rel. Hintopoulos v. Shaughnessy,* 353 U.S. 72, 77, 77 S.Ct. 618, 621, 1 L.Ed.2d 652, 655–56 (1957).