Donaciano **BUENO–CARRILLO,**
**Petitioner,**

v.

Michael H. **LANDON, District Director,**
**Immigration and Naturalization**
**Service, Respondent.**

No. 81–1816.

United States Court of Appeals,
Seventh Circuit.

Argued May 21, 1982.

Decided July 2, 1982.

---

Ralph M. Schelly, Law Offices of Ralph M. Schelly, Chicago, Ill., for petitioner.

Richard M. Evans, Dept. of Justice, Washington, D. C., for respondent.

Before PELL, WOOD and COFFEY, Circuit Judges.

PELL, Circuit Judge.

This case involves review of the denial of an application for suspension of deportation under § 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a). The Board of Immigration Appeals affirmed the denial of the application because it found that the petitioner had not established that he and his daughter, a United States citizen by virtue of her birth in this country, would suffer extreme hardship as a result of his deportation.

I.

The petitioner, Donaciano Bueno-Carrillo, is a native of Mexico who entered the United States illegally on March 14, 1972. His wife and four children, all undocumented aliens, joined him in this country a short while later. After arriving in this country, the petitioner obtained employment as a dishwasher at Henrici's Steak & Lobster Restaurant in Arlington Heights, Illinois. He has retained this position to the present and now earns a net weekly salary of approximately $200. In 1978, a fifth child, a daughter, was born in the United States to the petitioner and his wife. In the time since the petitioner arrived in this country, he has committed no crimes and has paid federal, state, and social security taxes.

On March 20, 1979, the Immigration and Naturalization Service began deportation proceedings against the petitioner. Bueno-Carrillo admitted deportability but applied for suspension of deportation, claiming that deportation would result in extreme hardship to both himself and his United States daughter. He testified that he is virtually unemployable in Mexico and that he has neither skills nor education. His former job in Mexico consisted of working in bean and corn fields. On cross-examination the petitioner admitted that the primary reason for

fearing that he would suffer hardship if he returned to Mexico was economic in nature in that he would not make as much money in Mexico as he is presently making in the United States. The consequence of this inability to secure equivalent employment in Mexico, he alleged, will be that he and his United States daughter will be deprived of adequate food and clothing. Finally, the petitioner alleged that he and his daughter will suffer extreme hardship because of the total inadequacy of the water, medical, and waste disposal systems that exist in Mexico. He contended, for example, that should his daughter become ill in Mexico, she would be unable to receive adequate medical treatment.

The immigration judge found that the petitioner had lived in the United States for the required seven years and that he was of good moral character. These findings are not disputed. The judge concluded, however, that the petitioner had not proved that either he or his daughter would suffer the extreme hardship needed to suspend deportation. The judge stated in his opinion that the hardship alleged was primarily economic in nature and not to such a degree that it could be described as "extreme." On appeal, the Board of Immigration Appeals affirmed.

## II.

■ Section 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a), gives the Attorney General or his delegates the discretion to suspend deportation of certain aliens to prevent "extreme hardship."[1] An otherwise deportable alien must show that he or she (1) has been physically present in the United States for not less than seven years; (2) is a person of good moral character; and (3) is a person whose deportation would ... result in *extreme hardship* to the alien or to his spouse, parent or child who is a citizen of the United States or alien lawfully admitted for permanent residence. (emphasis added).[2] The burden is on the alien to demonstrate both statutory eligibility and equities meriting the favorable exercise of discretion. 8 C.F.R. § 242.17(d) (1982); *Villena v. Immigration and Naturalization Service*, 622 F.2d 1352, 1357 (9th Cir. 1980) (en banc).

■ The scope of "extreme hardship" is not self-explanatory. *Immigration and Naturalization Service v. Wang*, 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam). Responsibility for its definition lies with the Attorney General or his delegates and the Supreme Court has held that they may properly construe the term "narrowly." *Id.* at 145, 101 S.Ct. at 1031. In *Wang*, the Court made it clear, after noting the exceptional nature of the suspension remedy, that the construction and application of the standard by the Immigration and Naturalization Service should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute. *Id.* at 144, 101 S.Ct. at 1031. A reviewing court may overturn a Board's decision only if there has been an abuse of discretion. *Mendoza-Hernandez v. Immigration and Naturalization Service*, 664 F.2d 635, 638 (7th Cir. 1981).

■ In this case, the record reveals that both the immigration judge and the Board of Immigration Appeals considered all of

---

1. Under the statutory predecessor of § 244, suspension of deportation was to be granted where the alien was able to demonstrate "exceptional and extremely unusual hardship" to himself or his spouse, parent, or child who was a citizen or a lawful permanent resident alien. Immigration and Nationality Act of 1952, § 244(a)(1), Pub.L. 82–414, 66 Stat. 214. The relief was intended to be limited to situations where the hardship would be unusual and where deportation would be unconscionable. S.Rep.No.1137, 82d Cong., 2d Sess. 25 (1952). In 1962 the requirement of "exceptional and extremely unusual hardship" was amended to the current requirement of "extreme hardship." Act of Oct. 24, 1962, Pub.L.No.87–885, § 4, 76 Stat. 1248.

2. The only hardship that can be considered in the instant case is the hardship to the petitioner and to his daughter who is a United States citizen by virtue of her birth in the United States. The hardship to Bueno-Carrillo's wife and four other children cannot be considered under the statute.

the relevant evidence before them, applied the correct standards of law, and concluded that the requisite "extreme hardship" had not been shown. Relevant evidence was neither distorted nor disregarded. While we are sympathetic to the plight of the petitioner, we cannot conclude that there has been an abuse of discretion.

■ The crux of the petitioner's claim of extreme hardship is that deportation would create severe economic hardship for himself and his daughter. This argument is foreclosed by a long line of authorities which state that while economic detriment is a factor for consideration, by itself it does not constitute extreme hardship. *See, e.g., Men Keng Chang v. Jiugni*, 669 F.2d 275, 279 (5th Cir. 1982); *Mendoza-Hernandez v. Immigration and Naturalization Service, supra*, 664 F.2d at 638. The petitioner argues on appeal to this court that the immigration courts improperly categorized the lower standard of living which the petitioner and his daughter would face in Mexico as "economic." However one is to classify it, conditions in an alien's homeland is not a dispositive factor in a suspension hearing. *See Yeung Ying Cheung v. Immigration and Naturalization Service*, 422 F.2d 43, 46–47 (3d Cir. 1970); *Llacer v. Immigration and Naturalization Service*, 388 F.2d 681 (9th Cir. 1968); *Matter of Anderson*, 16 I & N Dec. 596, 598 (BIA 1978). We do not believe that Congress intended the immigration courts to suspend the deportation of all those who will be unable to maintain the standard of living at home which they have managed to achieve in this country. If the critical emphasis were on the economic situation in the alien's homeland, a grant of relief would obviously be mandated in the case of aliens from many developing countries. It is only when other factors such as advanced age, illness, family ties, etc. combine with economic detriment that deportation becomes an extreme hardship. *See Matter of Anderson, supra*, 16 I & N Dec. at 598. In this case, such other factors do not exist.[3] The immigration judge noted that the petitioner, then aged 51, was healthy and physically able to seek and maintain employment in Mexico. There is no evidence of any illness in his family that requires medical treatment not available in Mexico. Finally, the fact that both the petitioner and his wife have family residing in Mexico, and not in the Chicago area, was known to the immigration court. The additional factors needed to combine with economic detriment in order to categorize the hardship as extreme are unfortunately missing in this case.

■ Nor can the petitioner benefit from the argument that should he be deported his daughter would be deprived of the privileges and benefits that come with United States citizenship. The Board of Immigration Appeals correctly noted that the petitioner cannot gain an immigration benefit merely because he has fathered a child in this country. *See, e.g., Ayala-Flores v. Immigration and Naturalization Service*, 662 F.2d 444, 446 (6th Cir. 1981). It is also true, as noted by the Board of Immigration Appeals, that while the petitioner's return to Mexico may mean that his child will also leave the United States, there is nothing in the law requiring the child's departure, and nothing to prevent her return. The immigration judge's statement that the child should "readily adapt," because of her "tender years," to "conditions in Mexico" has been described by the petitioner as "coldly indifferent toward the facts." This

---

3. The relevant factors which constitute extreme hardship must be considered in the aggregate, not in isolation. *See Jong Skik Choe v. Immigration and Naturalization Service*, 597 F.2d 168, 170 (9th Cir. 1979). It is the totality of factors in each case which determine the existence of extreme hardship. A single basis which may not in and of itself seek equation with the standard of extreme hardship can have greater relative weight in the scale of hardships when coupled with other factors which by themselves may also not reach the requisite threshold. The immigration court in this case was forced to consider in isolation the factor of economic conditions in an alien's homeland because this was in essence the only factor presented by the petitioner.

statement, however it may be characterized, does not constitute an abuse of discretion.

The petitioner places great reliance on *Santana-Figueroa v. Immigration and Naturalization Service*, 644 F.2d 1354 (9th Cir. 1981). In *Santana*, the Ninth Circuit reversed the finding of the immigration court that Santana had not proven extreme hardship, stating that deportation would deprive Santana "of the means to survive" and would also condemn him to "exist in life-threatening squalor." *Id.* at 1358. We do not believe that *Santana* controls in this case. The petitioner in *Santana* was 70 years old and allegedly crippled with a leg injury that precluded future employment. In this case, Bueno-Carrillo, at age 51, is healthy and physically able to seek and maintain employment. The court in *Santana* also stated that "[e]ven a significant reduction in standard of living is not, by itself, a basis for relief." *Id.* We note that this is precisely the type of economic loss that Bueno-Carrillo claims he will suffer.

### III.

The immigration judge, after taking testimony, concluded that Bueno-Carrillo had not shown the extreme hardship necessary to suspend deportation. The record reveals no abuse of discretion by either the immigration judge or the Board of Immigration Appeals. Accordingly, the order of the Board of Immigration Appeals is

AFFIRMED.