Sebastian DIAZ–SALAZAR, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, and The Board of Immigration Appeals, Respondents.

Nos. 82–1130, 82–1610.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1982.

Decided March 1, 1983.

Certiorari Denied June 20, 1983. See 103 S.Ct. 3112.

---

Virgil W. Mungy, Chicago, Ill., Bruce Bornstein, Freedman & Bornstein, Chicago, Ill., for petitioner.

Margaret J. Perry, Office of Immigration Litigation, Washington, D.C., for respondents.

Before CUDAHY and POSNER, Circuit Judges, and WEICK,* Senior Circuit Judge.

_____

* The Honorable Paul C. Weick, Senior Circuit Judge of the Sixth Circuit Court of Appeals, is sitting by designation.

CUDAHY, Circuit Judge.

Petitioner Sebastian Diaz-Salazar ("Diaz-Salazar") asks us to review the Board of Immigration Appeals' ("BIA") denial of his petition to stay deportation and to reopen deportation proceedings. Two consolidated petitions are before us: No. 82–1130, a petition for review of an oral denial of a motion to stay deportation, and No. 82–1610, a petition to review the denial of Diaz-Salazar's motion to reopen proceedings to consider whether his deportation should be suspended on grounds of extreme hardship pursuant to section 244 of the Immigration Act, 8 U.S.C. § 1254 (1976). The Immigration and Naturalization Service ("INS") also has filed a motion to dismiss the petition in No. 82–1130 for lack of jurisdiction and to reprimand petitioner's counsel and assess double costs. We grant the petition to dismiss No. 82–1130, but deny the motion to reprimand and assess costs. In No. 82–1610, we hold that the BIA did not abuse its discretion in denying petitioner's motion to reopen.

## I.

Petitioner, Sebastian Diaz-Salazar, entered the United States illegally in 1974 and has been living and working in Chicago since that time. The Immigration and Naturalization Service moved to deport him in September of 1980, and at an October hearing he was granted voluntary deportation within 90 days. Diaz-Salazar appealed the decision to deport him to the Board of Immigration Appeals and requested a joint hearing with the woman whom he considered to be his common-law wife.[1] The BIA denied this appeal on February 4, 1981, and on March 27, the INS set the date of deportation for April 22, 1981. On April 3, 1981, Diaz-Salazar filed a petition for review with this court and obtained a stay of deportation pursuant to 8 U.S.C. § 1105a(a)(3) (1976).

By late May, Diaz-Salazar had acquired seven years residence in the United States and thus became eligible to apply for suspension of deportation on grounds of extreme hardship pursuant to section 244 of the Immigration Act, 8 U.S.C. § 1254.[2] In the months of June and July, he divorced his Mexican wife and legally married the woman with whom he had been living in Chicago. On August 6, 1981, he filed an application to suspend deportation pursuant to section 244, and on August 7, 1981, his previous petition before this court was dismissed as moot.

During the pendency of Diaz-Salazar's application to suspend deportation, the INS ordered him to report for deportation on December 17, 1981. On December 16, he filed an application to stay the deportation and a motion to reopen deportation proceedings before the administrative law judge. His attorney also filed for a temporary restraining order and for a writ of habeas corpus in federal district court. Judge Leighton denied this relief, however, on the grounds that Diaz-Salazar had failed to exhaust administrative remedies. A stay was granted by the administrative law judge, however, until a decision was reached upon his motion to reopen. That motion was denied, in turn, on January 6, 1982, on the ground that Diaz-Salazar had failed to make a prima facie showing of extreme hardship; and the stay was lifted. Diaz-Salazar appealed this denial to the BIA on January 15.

During the pendency of this appeal, the INS set January 29, 1982 as a new date for deportation. However, the INS apparently had not transmitted the record in the case to the BIA at this time; thus the BIA could

---

1. Diaz-Salazar in fact was separated from a wife and two children whom he had left in Mexico in 1974. Thus the woman with whom he lived in Chicago and by whom he had two children born here was not his wife, although he seems to have considered her so. His attorney was not aware of the marriage in Mexico until he began to prepare the Petition for Suspension of Deportation.

2. Section 244, 8 U.S.C. § 1254, provides that an alien who has been present in the United States for seven years and is of good moral character may apply for suspension of deportation on grounds of extreme hardship to himself or to his spouse or family members who are U.S. citizens or residents.

not move forward expeditiously with the appeal. Diaz-Salazar's counsel therefore telephoned the BIA on January 25 to request a stay of deportation, but this request was orally denied. Counsel also filed a petition for habeas corpus, but it was denied by Judge Leighton on the grounds that the district court had no jurisdiction to review the case. On January 26, counsel filed a petition to review the oral denial of the motion to stay deportation, one of the two petitions which are before us for review (No. 82–1130). On March 30, 1982, the BIA formally denied Diaz-Salazar's motion to reopen, on the grounds that he had failed to establish a prima facie case that he would be able to obtain suspension of deportation pursuant to section 244. This denial is also before us for review (No. 82–1610), pursuant to 8 U.S.C. § 1105a(a). We shall consider these two petitions and the accompanying motion to dismiss in order.

## II.

### No. 82–1130

■ Our jurisdiction to review orders of the BIA is limited by 8 U.S.C. § 1105a(a) to "final orders of deportation." A denial of a stay of deportation is not such a final order. *Cheng Fan Kwok v. INS,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Reyes v. INS,* 571 F.2d 505 (9th Cir.1978). This court does not, therefore, have jurisdiction to review the oral denial of a request for the stay of deportation at issue in No. 82–1130.

■ Although this petition must therefore be dismissed on relatively straightforward jurisdictional grounds, we do not think that the filing of the petition is adequate grounds to sanction petitioner's attorney. Counsel was attempting vigorously to represent the interests of his client at a time when the INS was moving to deport him during the pendency of a statutorily provided appeal. Had he been deported, that appeal to the BIA would have been moot. Counsel thus essayed several routes to stay deportation of his client pending a final determination of his substantive case under section 244. At argument, the government conceded that the district

court's denial of Diaz-Salazar's petition for a writ of habeas corpus on jurisdictional grounds was probably incorrect. Thus, the proper appellate route may well have been to appeal that denial to us. But this jurisdictional issue had not been presented in exactly this posture in this circuit before, and there is no reason to assume that the proper course should have been immediately apparent to counsel. We thus deny the motion to reprimand and to assess costs, while granting the petition to dismiss No. 82–1130 for lack of jurisdiction.

## III.

### No. 82–1610

■ A denial of a motion to reopen deportation proceedings is, on the other hand, a final order of deportation and thus reviewable by this court. *Giova v. Rosenberg,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964). We will not overturn a decision of the BIA denying such a motion, however, absent an abuse of discretion. *Kashani v. INS,* 547 F.2d 376 (7th Cir.1977); *Tupacyupanqui-Marin v. INS,* 447 F.2d 603 (7th Cir. 1971).

■ In order to prevail in a motion to reopen deportation proceedings for consideration under the extreme hardship standard of section 244, an alien must establish a prima facie case of eligibility for relief under that section of the Immigration Act. *INS v. Wang,* 450 U.S. 139, 141, 101 S.Ct. 1027, 1029, 67 L.Ed.2d 123 (1980). Thus, unless Diaz-Salazar presented a prima facie case that he would be subjected to extreme hardship of the sort contemplated by section 244, the BIA was entirely within its allowable discretion in denying his petition to reopen. Moreover, the *Wang* case instructs us that the application of the extreme hardship standard in an individual case is a task allotted primarily to the INS and not to the courts. *Id.* at 144, 101 S.Ct. at 1031. Although the agency must consider all relevant factors in making its determination, there is no evidence here that the INS has failed to do so or that the agency abused its discretion in concluding

that the facts of this case did not place it within the category defined as extreme hardship by the case law.

■ The relevant facts which have been placed before the INS, BIA, and this court can be summarized as follows: The petitioner has a wife and two children under the age of three in Chicago; the children are natural-born citizens of the United States. He also has relatives in Mexico. Petitioner has a good job in Chicago and presumably, due to his lack of formal education and current economic conditions in Mexico, would have a difficult time finding similarly good employment in Mexico. Deportation would be very disruptive of the life which he and his second wife have built in Chicago, as well as psychologically distressing to them.[3] Considering all of these factors, however, we are nonetheless constrained to conclude that the BIA was within its discretion in finding that petitioner would not succeed in obtaining suspension of deportation under section 244 and in therefore denying his motion to reopen.

■ It is well established that economic hardship by itself does not constitute extreme hardship under section 244. *See, e.g., Mendoza-Hernandez v. INS,* 664 F.2d 635, 638 (7th Cir.1981). Moreover, economic conditions in an alien's homeland are not a dispositive factor in a suspension hearing. *See, e.g., Bueno-Carrillo v. Landon,* 682 F.2d 143, 147 (7th Cir.1982). Even the Ninth Circuit cases decided after the *Wang* decision, upon which petitioner relies, require that some factor beyond the general misery attendant upon deportation present itself in order to justify relief under the extreme hardship standard. *Prapavat v. INS,* 662 F.2d 561 (9th Cir.1981) (health problems of child); *Santana-Figueroa v. INS,* 644 F.2d 1354 (9th Cir.1981) (advanced age of petitioner); *Mejia-Carrillo v. INS,* 656 F.2d 520 (9th Cir.1981) (separation of teenage son from divorced father and from completion of high school).

■ In the case at hand, no special circumstances are presented sufficient to bring petitioner's situation within the extreme hardship standard. His children are still of pre-school age and thus less susceptible to the disruption of education and change of language involved in moving to Mexico. There are no unique reasons why petitioner, in comparison with the many other Mexicans in his situation now resident in the United States, will be unable to find employment upon returning to Mexico or why he or any member of his immediate family requires health care available only here. Thus, although we recognize the unhappy prospects which the petitioner faces, we cannot hold that the BIA abused its discretion in denying the petitioner's motion to reopen deportation proceedings.[4]

The petition for review is hereby

DISMISSED.

WEICK, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in No. 82–1130 and respectfully dissent in No. 82–1610 for the reasons hereinafter set forth.

INS concedes that this court has jurisdiction to review the petition for review filed in No. 82–1610. The issue here is whether the Board of Immigration Appeals (BIA) abused its discretion in denying, without an evidentiary hearing, petitioner's motion to reopen his deportation hearing in order to

---

3. Petitioner urges that the BIA abused its discretion in not reopening to consider testimony submitted by a social worker to this effect. We have considered the material contained in an affidavit submitted by this social worker and find it merely to be cumulatively supportive of the facts already described herein.

4. We are not insensitive to the fundamental human concerns raised in Judge Weick's dissenting opinion. Essentially, however, we believe the pain and hardship attendant upon the proposed deportation of Diaz-Salazar is not distinguishable from the conditions surrounding a substantial number of similar deportations. The Supreme Court in *Wang* has unmistakably instructed us not to substitute our judgment for that of the Immigration and Naturalization Service in these matters. Further, this court is without authority to suspend the immigration laws because Mexico has currently fallen into economic crisis. In this connection, the INS may undertake to review all deportations to Mexico in the light of current conditions.

apply for suspension of deportation pursuant to Section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(i). The motion was supported by affidavits to the effect that petitioner is gainfully employed in this country, earning $20,000 a year, and he and his present wife have been living in the United States for more than seven years and are the parents of two minor children, both under three years of age, born in the United States and thus became citizens of this country. This is evidence of extreme hardship which the children and their father and mother would suffer if the father was deported. Affidavits were also submitted as to the excellent reputation and industry of petitioner, an emigrant with a third grade education from Mexico to this country and as to his gainful employment here, which he was unable to secure in Mexico. The economy, as a matter of common knowledge, is severely depressed in Mexico at the present time and the United States for some time has been confronted with serious problems in coping with unlawful migration of many unemployed Mexican citizens to this country, who crossed the broad borders of 2,000 miles between the two countries in order to obtain work and earn a living in the United States, which they could not obtain in Mexico. Petitioner also submitted to BIA a social evaluation of petitioner and his family by Ms. Luisa P. Maurer, MSW, with her resume attached thereto, which indicated that the deportation of petitioner would create an extreme hardship to petitioner, his wife and minor children and she would so testify at the hearing. BIA declined to reopen to hear this testimony of Ms. Maurer which was not previously available. BIA thus abused its discretion.[1]

Petitioner's two children, who are citizens of the United States certainly had legal rights to due process of law. The petition for review has merit and the children and their father and mother would have been subjected to extreme hardship if petitioner had been deported without an evidentiary hearing and an appropriate adjudication of the merits to which he and his wife and children were entitled.

In denying petitioner's motion to reopen the deportation proceedings for consideration of an application for suspension of deportation under Section 244(a)(i) of the Immigration and Nationality Act, INS and the majority rely principally upon a Per Curiam decision of the Supreme Court in *INS v. Wang*, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123, *rehearing denied*, 451 U.S. 964, 101 S.Ct. 2037, 68 L.Ed.2d 342 (1981), Per Curiam. INS does not indicate that the Per Curiam related only to a ruling of the court not to grant the petition for a writ of certiorari and give the case plenary consideration, and the case was never admitted to the Supreme Court for decision on its merits. Justices Brennan, Marshall and Blackmun voted to grant the petition for certiorari and give the case plenary consideration.

The Per Curiam of the Supreme Court also pointed out deficiencies in the record which precluded granting certiorari and plenary consideration of the merits. Extreme hardship in that case was asserted as to two American born children, because neither child spoke Korean and would thus lose "educational opportunities if forced to leave this country". Respondents in that case also asserted some economic hardship to themselves and their children from the

---

1. The terrible conditions of destitution now prevailing in Mexico are graphically portrayed in an article on page 1 of The Wall Street Journal of November 17, 1982, entitled:

   *Desperate Journey*
   Hard Times at Home
   Cause More Mexicans
   To Enter U.S. Illegally

   ---

   Many Are Caught in Texas;
   Their Tales of Privation
   Illustrate Extent of Crisis

---

'Peso Isn't Worth a Damn'
The article states that "proposed changes of U.S. immigration laws would grant amnesty to illegal aliens if they have resided 'continuously' in the U.S. since before January, 1980, but legislators haven't yet officially defined the term 'continuously'. (The legislation passed the Senate in August and is tentatively set to be voted upon in the House late this month or early December)."

forced liquidation of their assets at a possible loss. These allegations were largely conclusory and none of them were sworn to in affidavits or otherwise supported by evidentiary materials. BIA ignored in the present case, the regulation which requires facts relating to hardship be supported by affidavits, 8 C.F.R., Part 3, § 3.8. Affidavits and evidentiary materials were supplied in the present proceeding by petitioner.

On page 144 of the Per Curiam of the Supreme Court it is stated:

Here, the Board considered the facts alleged and found that neither respondents nor their children would suffer extreme hardship. The Board considered it well settled that a mere showing of economic detriment was insufficient to satisfy the requirements of § 244 and in any event noted that respondents had significant financial resources while finding nothing to suggest that Mr. Wang could not find suitable employment in Korea. It also followed that respondents' two children would suffer serious economic deprivation if they returned to Korea.

In our case, the evidence was entirely different. It was shown by overwhelming evidence that the two minor children, a boy and girl, both under three years of age, who are American citizens, would suffer extreme hardship, and the Board of Immigration Appeals did not give this matter adequate consideration. Diaz-Salazar left Mexico because he was unable to support himself and he came to this country. It has been shown by overwhelming evidence that the two minor children would suffer extreme hardship if he were deported to Mexico, where he could not earn a living to support himself and the children when in fact that is the very reason he left Mexico. He could not even support himself. He now has a lucrative position in Chicago, earning $20,000 a year and it is suggested that he take them back to Mexico, where he could not even support himself. My concern is entirely based on the hardship suffered by these two minor children who are citizens of the United States, and I think that they are entitled to due process of law and to have an adequate hearing. The Board of Immigration Appeals did not even allow the witness as to social evaluation to testify as to extreme hardship, and this is another ground of error.

In *Villena v. INS,* 622 F.2d 1352 (9th Cir.1980), the court sitting en banc stated:

The mere fact that an alien's child has been born in the United States does not entitle the alien to any favored status in seeking discretionary relief from deportation. *E.g. Wang v. INS,* 622 F.2d 1341 (9th Cir.1980) (en banc). However, as we have repeatedly stated, the Board must consider what effect the deportation will have on the citizen child and whether the child will suffer extreme hardship. Because the nature and extent of hardship to a citizen child is difficult to discern without a hearing, circumstances that suggest that the alien's deportation would cause extreme hardship to his child warrant a hearing. *Wang v. INS,* 622 F.2d 1341 (9th Cir.1980) (en banc).

The court remanded to BIA for an additional evidentiary hearing.

In *Mejia-Carrillo v. INS,* 656 F.2d 522 (9th Cir.1981), the court stated:

Under § 244(a), economic loss alone does not establish extreme hardship, but it is still a fact to consider in determining eligibility for suspension of deportation. *Jong Shik Choe v. INS,* 597 F.2d 168, 170 (9th Cir.1979); *Urbano de Malaluan v. INS,* 577 F.2d 589, 594 (9th Cir.1978). In addition, the Board must consider personal and emotional hardships which result from deportation. *Chan v. INS,* 610 F.2d at 655. Included among these are the personal hardships which flow naturally from an economic loss—decreased health care, educational opportunities, and general material welfare. The most important single factor may be the separation of the alien from family living in the United States. In fact, this court has stated that separation from family alone may establish extreme hardship. *Urbano de Malaluan v. INS,* 577 F.2d at 593–94; *Yong v. INS,* 459 F.2d 1004, 1005 (9th Cir.1972); *see Bastidas v. INS,* 609 F.2d 101, 104–05 (3rd Cir.1979).

In *Wright v. INS,* 673 F.2d 153, 158 (6th Cir.1982), the court not only granted the

petition for review, it also set aside the order of deportation and remanded with instructions to dismiss the order to show cause, thereby terminating the deportation proceeding. The court stated:

> The Board should have also related that Jasette had an equity in a house which she purchased from her earnings for several years as an employee of the Fisher Body Division of General Motors. She will lose this equity and have to take her child to Jamaica if the INS order of deportation is enforced, a very real disaster and hardship. The daughter who is a United States citizen should not be treated this way. In 1982, Jasette is still living in this country and supporting her five year old citizen daughter. With all the long delay, there is certainly nothing equitable about the order of deportation.

In *Rios-Pineda v. U.S. Dept. of Justice, Etc.,* 673 F.2d 225 (8th Cir.1982), the court held:

> Where aliens following their entry without inspection had been physically present in United States continuously since May 1, 1974 and had met seven-year continuous presence requirement during pendency of appeal, where husband alien in addition to being homeowner had been gainfully employed since 1974, and where both aliens' children were born in United States and has resided there since birth, aliens were entitled to consideration and ruling on their claim that they were entitled to suspension of deportation on a proper motion to reopen. Immigration and Nationality Act, § 244(a)(1), 8 U.S.C.A. § 1254(a)(1).[2]

INS contends that the many decisions of the Ninth Circuit and Third Circuit conflict with the Supreme Court's decision in *Wang.* If there is any truth in this contention, why did not the INS petition the Supreme Court for certiorari in the many circuit court cases which it claims were erroneously decided? It is submitted that the Supreme Court in *Wang,* never intended to deprive a petitioner of his right to an evidentiary hearing in all cases.

The social evaluation by Ms. Maurer, MSW, indicated that the deportation of petitioner would create extreme hardship to petitioner and his family. It states:

> The couple state they see their future in terms of providing a home for their children in the U.S. Their lack of formal education would create extreme hardship to them in seeking employment in Mexico. Their citizen children would suffer unnecessarily. Mrs. Diaz' extended family is here and Mr. Diaz has lost contact with his extended family. His first wife is already living with someone else. From their perspective, they have nothing to offer their children there; no economic stability, no love of extended family members, and the insecurity intrinsic to the unknown.
>
> .  .  .  .  .
>
> It is evident that the couple have built strong family and community ties in the Chicago area and that they have achieved a position of respect through hard work and sacrifice which gives a significant boost to their morale and egos. Deportation threatens to destroy all that they have achieved over the years and to tear apart their close family nucleus and to deprive their children of all of the advantages of their birthright and of having a close family and security.
>
> Their deportation to Mexico would cause a severe blow to the entire family and would not be without impact to the community. Thus, it is my recommendation that the court be lenient in this case and allow the U.S. citizen children, Alfredo and Sylema, the joy, stability, security and devotion of a united family.

In my opinion, the finding of the BIA that petitioner did not establish a prima facie case is clearly erroneous, as it was proven by overwhelming evidence, and BIA abused its discretion in not granting an evidentiary hearing on the merits of the case. The Board neglected to demonstrate just how petitioner with a third grade education, who was unable to obtain employ-

---

2. Other pertinent decisions are *Sida v. INS,* 665 F.2d 851, 854 (9th Cir.1981); *Prapavat v. INS,* 662 F.2d 561 (9th Cir.1981); *Ravancho v. INS,* 658 F.2d 169 (3d Cir.1981); *Hee Yng Ahn v. INS,* 651 F.2d 1285 (9th Cir.1981); *Santana-* *Figuero v. INS,* 644 F.2d 1354 (9th Cir.1981); *Tovar v. INS,* 612 F.2d 794 (3d Cir.1980); *Urbano de Malaluan v. INS,* 577 F.2d 589 (9th Cir. 1978).

ment in Mexico, when he unlawfully migrated to this country, and upon being deported to Mexico obtain employment to support himself, his wife and two minor American children in the United States. It is obvious that the wife and children would become destitute and a charge upon society here, if petitioner is deported to Mexico and does not take his wife and children with him, since he could not obtain a living even for himself. Therefore, petitioner would be motivated not to take his wife and children with him to Mexico and would go there by himself and suffer the consequences. In the United States his wife and American born children will be taken care of and not allowed to starve. In reality, the order of deportation, if petitioner takes his wife and American children with him to Mexico operates to sentence them to a life of destitution. If the wife and children are permitted to remain in the United States, they can at least live and be happy "in the land of the free and the home of the brave".

The order of the Board denying petitioner's motion to reopen his deportation hearing in order to apply for suspension of deportation pursuant to Section 244(a)(c) of the Act should be vacated and set aside, and the cause remanded for an evidentiary hearing and determination of the merits of the case.