## MATTER OF KIM

### In Deportation Proceedings

A–14516808
A–14409745

*Decided by Board August 22, 1974*

Suspension of deportation under section 244(a)(1) of the Act based on seven years physical presence in the United States will not be granted on a claim of extreme hardship, where the only facts presented tended to show better economic and educational opportunities for the respondent's United States citizen children in the United States than in Korea.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant student, remained longer than permitted (both respondents).

ON BEHALF OF RESPONDENTS:
Leslie J. Frank and
Bert D. Greenberg, Esquires
California Federal Building
Suite 1800
5670 Wilshire Boulevard
Los Angeles, California 90036

ON BEHALF OF SERVICE:
William S. Howell
Trial Attorney
David L. Milhollan
Appellate Trial Attorney

In a decision dated April 27, 1973, the immigration judge found the respondents deportable as charged, and granted their applications for suspension of deportation. The Service has appealed from that decision. The appeal will be sustained, and the record will be remanded to the immigration judge.

At the hearing, the respondents conceded deportability and applied for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act. Neither of the respondents is within any of the categories listed in section 244(a)(2) of the Act, each respondent is a person of good moral character, and each respondent has satisfied the seven-year physical presence requirement of section 244(a)(1). The sole issue on appeal is whether the respondents have established the "extreme hardship" which is a requisite for eligibility for suspension of deportation under section 244(a)(1).

The respondents, husband and wife, are both natives and citizens of Korea. They both entered the United States as nonimmigrant students,

and they both remained longer than their authorized stay. The respondents were married in 1966 and are the parents of two United States citizen children. One child is six and one half years old and the other child is three years old. The respondents claim that their deportation would result in extreme hardship to them and to their United States citizen children.

The respondents base their claim of extreme hardship to themselves on their alleged inability to find suitable employment if they returned to Korea. They also testified that if deported they would take their sons with them to Korea. They contend that this would be extreme hardship on the children because they would be deprived of the educational and economic advantages that are available to United States citizens in this country. The respondents also claim that the oldest child would suffer hardship because he has not learned to speak Korean.

The immigration judge stated that he was skeptical of the respondents' claims that they would have great difficulty in securing suitable employment in Korea. In this respect, he noted that both respondents have college educations, and that therefore they would both have more opportunities than the average person in Korea. Moreover, the mere fact that an alien's economic opportunities in a foreign country may be somewhat less than they are in the United States is not, by itself, sufficient to establish the "extreme hardship" required for suspension of deportation under section 244(a)(1) of the Act. *Matter of Kojoory*, 12 I. & N. Dec. 215 (BIA 1967); *Matter of Sangster*, 11 I. & N. Dec. 309 (BIA 1965); *Matter of Uy*, 11 I. & N. Dec. 159 (BIA 1965). We agree with the immigration judge's conclusion that the respondents' deportation would not result in "extreme hardship" to them.

The immigration judge went on to find, however, that the respondents' United States citizen children should be raised in the United States. He concluded, after considering the rights and interests of the citizen children, that it would be "extreme hardship" on the children to take them to Korea. We agree with the Service's contention that this conclusion is erroneous.

"Extreme hardship" is not a term of fixed and inflexible content or meaning. The question of whether there is "extreme hardship" depends upon the facts and circumstances peculiar to each case. *Matter of Sangster*, supra; *Matter of Uy*, supra; *Matter of Hwang*, 10 I. & N. Dec. 448 (BIA 1964). In the present case, no facts have been presented to show that the respondents' citizen children would suffer "extreme hardship." The only "facts" presented in the record are several general statements by the respondents to the effect that their children would have better economic and educational opportunities in the United States than in Korea.

This case does not involve the separation of a family. As the immigra-

89

tion judge pointed out, the children are so young that no claim can be made that they could not adjust to living in Korea (Tr. p. 50). Nor is there any evidence that the respondents could not support and educate the children in Korea.

One of the respondents' children is preschool age, and the other is so young that the move to Korea would not be a significant disruption of his educational program. It is not apparent that the children will lack educational and economic opportunities in Korea, nor is it evident that the educational and economic situation in Korea would be such as to preclude their ever returning to the United States. Both of the respondents were able to obtain college educations in Korea, to learn English, and to come to the United States and adapt to life here; there is no reason to believe that their children will not be able to do the same.

Under the circumstances present in this case, we find that the respondents have not shown their deportation would result in "extreme hardship" to their citizen children. We note that Congress has specifically precluded minor United States citizen children from conferring preferred immigration status upon their parents under section 201(b) of the Act.

We will sustain the Service appeal and reverse the immigration judge's order granting suspension of deportation. The record will be remanded to the immigration judge for further proceedings.

**ORDER:** The Service appeal is sustained, and the order granting suspension of deportation is reversed.

*Further order:* The record is remanded to the immigration judge for whatever further proceedings may be necessary and the entry of an appropriate order.

**Warren R. Torrington, Board Member, concurring:**

The dissenting opinion assumes certain facts which simply are not true. Aliens have never been *"compelled,* on departing from the United States, to leave behind their American citizen children." [Emphasis added.] Such children are not "banished from the country of their birth" when they join their deportable parents in the parents' home country. I find particularly uncalled for the dissenter's intimation that the majority decision may be "based on some notion that there is a Congressional policy favoring the departure of United States citizen minor children of deportable aliens." There has, of course, never been, and could never have been, such a Congressional policy which would be in clear violation of the Constitution of the United States. On the other hand, the courts have consistently held that a deportation order entered against the parents of United States citizen children does not deprive the children of any Constitutional rights. *Application of Amoury,* 307 F. Supp. 213 (S.D. N.Y. 1969); *Perdido* v. *INS,* 420 F.2d 1179 (C.A. 5, 1969); *Dayao* v.

*Staley,* 303 F. Supp. 16 (S.D. Tex. 1969); aff'd 424 F.2d 1131 (C.A. 5, 1970); and *Faustino* v. *INS,* 302 F. Supp. 212 (S.D.N.Y. 1969). This view was also shared by the writer of the present dissenting opinion in *Matter of Lopez,* 14 I. & N. Dec. 424 (BIA 1973), in which the Board stated, inter alia:

> "Two grounds for appeal are set forth in the notice of appeal. The first is that the respondents have a minor child born in the United States whose constitutionally guaranteed rights to parental care would be violated if the respondents are required to depart. The short answer is that whatever rights the child may have under the Constitution do not authorize the respondents to remain here in violation of the immigration laws. The respondents have it within their own power to avoid the alleged hardship that would befall the child on separation by taking the child with them when they depart."

The statute (section 244(a)(1) of the Immigration and Nationality Act) has been on the books for many years. Congress knew what it meant. We have known what it meant. The novel theories advanced by the dissenters would now expand grants of suspension of deportation in previously unheard-of ways.

Any American-born child was born in what we believe to be the greatest country on earth. Thus, such a child may indeed be considered to suffer some hardship of one kind or another the moment it leaves with its parents for their home country, in which, by definition, conditions cannot be equal to those in the United States. That kind of hardship, however, has never been considered by Congress, the courts, or otherwise, to be the "extreme hardship" required for eligibility for relief under section 244(a)(1) of the Act.

All but one of the cases cited in the dissenting opinion have nothing to do with the provisions of section 244(a)(1) of the Immigration and Nationality Act, the only statute here involved. *Young* v. *INS,* 459 F.2d 104 (C.A. 9, 1972), does not support the novel notions presented in the dissenting opinion.

I concur in the majority opinion.

**Maurice A. Roberts, Chairman, dissenting:**

I respectfully dissent. I would dismiss the Service appeal or, in the alternative, would on remand give the respondents an opportunity to present additional evidence on the issue of extreme hardship to their children.

The respondents are the parents of two United States citizen children, born in this country and now aged respectively six and a half and three years old. The immigration judge found that respondents' deportation would result in extreme hardship to the children. Since the statutory provisions for suspension of deportation are remedial in nature, they should not be strictly and technically construed, *Wadman* v.

*INS*, 329 F.2d 812 (C.A. 9, 1964). I would not disturb the immigration judge's finding of extreme hardship.

If the respondents were compelled, on departing from the United States, to leave behind their American citizen children, it is hardly conceivable that their forced separation would not result in extreme hardship to each. In a suspension of deportation setting, the courts have noted the hardship involved in breaking up close family ties, *Yong* v. *INS*, 459 F.2d 1004 (C.A. 9, 1972).

The mere fact that the respondents will take their children to Korea with them and that the children are young enough to adjust to living in Korea does not eliminate extreme hardship to the children in being thus banished from the country of their birth. Merely because such a child may not be deprived of the loving care of his parents does not mean that other significant deprivations will not ensue. The possibilities of extreme hardship to a United States citizen child under these circumstances are numerous. Depending on the circumstances prevailing in the foreign country, the child may be deprived of the educational and economic opportunities, the health services and other benefits readily available to him in this country. He may be deprived of the great democratic freedoms which are ours. If brought up in a home, such as respondents', where English is not the usual language, he is likely to grow up without a knowledge of our language; or, if he does learn to speak it, is likely to do so with a foreign accent. On becoming *sui juris* and returning to this country, as is his right as a United States citizen, he may find that his absence from his homeland during his formative years has placed him at a great disadvantage economically, educationally, socially and health-wise. In my estimation, elements such as these can add up to the "extreme hardship" Congress designed section 244 to ameliorate.

The majority opinion notes (p. 4) "that Congress has specifically precluded minor United States citizen children from conferring preferred immigration status upon their parents under section 201(b) of the Act." That is undoubtedly true; but it has no relevance to this case, which arises under an entirely different provision of the Act. If, by this reference, the majority opinion indicates that its decision is based on some notion that there is a Congressional policy favoring the departure of United States citizen minor children of deportable aliens, I must demur.

Insofar as concerns a Congressional policy with respect to minor American-born children of deportable alien parents, I know of nothing which evinces a generalized Congressional desire that such children should leave this country. A child born in the United States of alien parents is as much a citizen as one born to citizen parents and has the same legal right to remain here. It is true that in the provison to section

201(b) of the Act, Congress declined to confer immediate relative status on the alien parents of minor children. Without going into the legislative history of that provision, it seems clear that Congress did not intend to encourage aliens to come here illegally by giving then quota exemption if they managed to beget a child here before they could be deported. The courts have held that this discrimination with respect to the alien parents of minor citizen children does not impair the latter's rights under the Constitution.

It by no means follows that section 201(b)'s proviso evinces a generalized Congressional policy that minor American-born children of deportable aliens should depart under *all* circumstances. Quite the contrary, other provisions of the Act set up various forms of relief from exclusion or deportation, most of which are discretionary but one of which is mandatory, for alien parents of American children, who by definition must be minors.[1] See, e.g., sections 212(e), 241(f), and 244(a). Thus, in construing section 241(f) to apply in a situation where the citizen child was born here not long after the alien's arrival, the courts have stressed the underlying Congressional policy of uniting families, *INS* v. *Errico*, 385 U.S. 214 (1966); *Godoy* v. *Rosenberg*, 415 F.2d 1266 (C.A. 9, 1969).

Section 244(a) of the Act authorizes discretionary suspension of deportation to an alien parent who meets certain eligibility requirements and whose deportation would cause extreme hardship to his citizen child. Since the latter is by definition a minor, this provision seems clearly incompatible with the notion that there is a general Congressional policy that deportable alien parents of minor American-born children should depart and take their American-born children with them.

Under section 244(a), the alien parent seeking suspension must show at least seven years' continuous physical presence here in addition to the "extreme hardship" requirement. This is a far cry from the situation Congress sought to guard against in enacting the proviso to section 201(b). The Congressional policy underlying its deliberate failure to provide preferential treatment in the issuance of visas to alien parents of minor United States citizen children can have little to do with the type of situation presented in section 244(a) cases, which involve both long residence here and extreme hardship, neither of which is relevant under section 201(b).

In *Wadman* v. *INS*, supra, the court enunciated an approach to suspension cases which should guide us here. The court stated, 329 F.2d at 816–817:

---

[1] Section 101(b)(1) states that the term "child" means an unmarried person under twenty-one years of age.

93

> In construing §244 we are in an area in which strict construction is peculiarly inappropriate. The apparent purpose of the grant of discretion to the Attorney General is to enable that officer to ameliorate hardship and injustice which otherwise would result from a strict and technical application of the law. A strict and technical construction of the language in which this grant of discretion is couched could frustrate its purpose. A liberal construction would not open the door to suspension of deportation in cases of doubtful merit. It would simply tend to increase the scope of the Attorney General's review and thus his power to act in amelioration of hardship.

In keeping with the foregoing rule of construction, I would not disturb the immigration judge's finding of extreme hardship to the children here.

The majority decision reverses the immigration judge's grant of suspension of deportation and remands "for whatever further proceedings may be necessary and the entry of an appropriate order." I assume this contemplates that the immigration judge will now give the respondents an opportunity to apply for voluntary departure in lieu of deportation. On remand, I think the respondents should also have the opportunity to present further evidence to prove that their deportation will result in extreme hardship to their children.

Louisa Wilson, Member, dissenting:

I concur in the foregoing dissenting opinion.