## MATTER OF CORREA

### In Deportation Proceedings

### A-21053630

*Decided by Board July 31, 1984*

(1) Although an immigration judge's decision granting a motion to reopen deportation proceedings is an interlocutory order, the Board of Immigration Appeals will entertain an appeal from that decision where a pattern of improper handling of motions by the immigration judge has developed.

(2) Where a motion to reopen deportation proceedings is opposed by either party, the immigration judge in ruling on the motion must state in writing the reasons for his decision; therefore, an immigration judge's use of Form I-328 (Order on Motion to Reopen Proceedings) to grant an opposed motion and his failure to provide an analysis of his reasons for granting the motion were inappropriate.

(3) In determining whether extreme hardship has been established for suspension of deportation purposes, equities which are acquired after a final order of deportation has been issued against an alien are entitled to less weight than those acquired before an alien has been found deportable.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [18 U.S.C. § 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:
Joseph F. O'Neil, Esquire
120 Lincoln Street
Boston, Massachusetts 02111

ON BEHALF OF SERVICE:
Cornelius T. Cashman
General Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The Immigration and Naturalization Service has appealed from the immigration judge's November 8, 1983, decision granting the respondent's motion to reopen his deportation proceedings. The appeal will be sustained.

An immigration judge's grant of a motion to reopen is an interlocutory order. *Matter of Ku*, 15 I&N Dec. 712 (BIA 1976). In order to avoid piecemeal review of cases, this Board does not ordinarily entertain interlocutory appeals. *Matter of Ruiz-Campuzano*, 17 I&N Dec. 108 (BIA 1979); *Matter of Ku, supra; Matter of Sacco*, 15 I&N

Dec. 109 (BIA 1974). However, we have on occasion accepted jurisdiction over such appeals where important questions regarding the administration of the immigration laws and the authority of immigration judges have been raised. *Matter of Victorino,* 18 I&N Dec. 259 (BIA 1982); *Matter of Alphonse,* 18 I&N Dec. 178 (BIA 1981); *Matter of Wadas,* 17 I&N Dec. 346 (BIA 1980); *Matter of Seren,* 15 I&N Dec. 590 (BIA 1976); *Matter of Fong,* 14 I&N Dec. 670 (BIA 1974). The present case is one of a number of cases where we have noted improper handling of motions by the immigration judge. We have concluded that this continuing problem is significant enough to warrant our entertaining this interlocutory appeal in order to resolve the matter.

The respondent is a 34-year-old native and citizen of Colombia. He was last admitted to the United States on January 18, 1975, authorized to remain in this country for not over 6 months. On August 19, 1975, an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) was issued against him, charging him with deportability as an overstay. He was found deportable on August 25, 1975, based on his own admissions, and was granted voluntary departure to October 1, 1975. The respondent did not depart as required but instead absconded. In 1982, the respondent filed a motion to reopen in conjunction with an application for suspension of deportation. This motion was forwarded by the immigration judge to the Service's acting chief legal officer on February 25, 1983. The Service opposed the motion by filing, on March 9, 1983, a printed notice of opposition together with a memorandum in opposition to the motion. The Service opposed reopening on the ground that the respondent had failed to make out a prima facie case of extreme hardship for suspension purposes. The Service also argued that reopening to apply for suspension was not warranted where the requisite 7 years' continuous physical presence was accumulated by evading deportation.

In response, counsel for the respondent filed a seven-page memorandum rebutting the Service's opposition. In this memorandum, counsel argued that the respondent's marriage and the births of his two United States citizen children constitute the new and previously unavailable evidence required for reopening. He also argued that a prima facie case of extreme hardship to the respondent and to his children had been made. He contended that the fact that the respondent's wife is the beneficiary of a fifth-preference visa petition filed by her United States citizen sister is an important equity that sets the respondent's case apart from those where suspension appli-

cants have no "immediate relatives" in the United States.[1] While admitting that the respondent's immigration history is not "without blemish," counsel argues that that history should not be considered an adverse factor in view of the respondent's "pattern of respectful cooperation with the Immigration Service" over the last 3 years.

On November 8, 1983, the immigration judge granted the respondent's motion to reopen by executing a Form I-328 (Order on Motion to Reopen Proceedings). The immigration judge crossed out the "no" in the phrase "[t]here being no opposition to the motion" printed on the Form I-328.

On appeal, the Service argues that the use of the Form I-328 was inappropriate in light of its written opposition to the motion. Without a written decision, the Service asserts, it is impossible to ascertain the rationale of the immigration judge in granting the motion. The Service argues that under our decision in *Matter of Daryoush*, 18 I&N Dec. 352 (BIA 1982), the immigration judge is required to state, in writing, the reasons for his decision.

The use of Form I-328 is provided for in 8 C.F.R. § 242.22 (1984), which states that "[a]n order by the immigration judge granting a motion to reopen may be made on Form I-328." The regulation thus does not specifically limit use of the form to unopposed motions. However, the form itself is worded in such a way that, at least when unaccompanied by a written memorandum, its use must logically be limited to unopposed motions. The body of the Form I-328 states, in its entirety:

UPON READING AND CONSIDERING respondent's motion to reopen deportation proceedings; and

There being no opposition to the motion

IT IS ORDERED that deportation proceedings be REOPENED.

We agree with the Service that the immigration judge's use of this form to grant an opposed motion by crossing out the word "no," and his failure to provide any analysis of his reasons for granting the motion, were entirely inappropriate. As the Service has pointed out, in *Matter of Daryoush, supra*, we held that a district director must state in writing the reasons for his decisions with regard to custody, even though the regulations do not specifically state such a requirement. Similarly, we now hold that where a motion to

---

[1] We note that while counsel consistently referred to the respondent's wife's sister as an immediate relative, she does not satisfy the statutory definition of immediate relative even as to the respondent's wife. *See* section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b) (1982). The respondent's relationship to his sister-in-law would not give rise to any benefits under the immigration laws.

reopen deportation proceedings opposed by either party, the immigration judge, in ruling on the motion, must state in writing, however briefly, the reasons for his decision. Such a requirement will help insure that the immigration judge, in ruling on motions, fully considers whether a prima facie case has been made, and whether the regulatory requirements for motions have been satisfied.

Counsel for the respondent has argued that the immigration judge should not "be subjected to scrutiny of his mental processes in arriving at a decision" and contends that if Congress wished to require "such a detailed explanation as the Immigration Service suggests," it would have so stated in the statute. We do not by today's holding suggest either that an immigration judge's "mental processes" must be carefully scrutinized, or that the immigration judge must give a "detailed explanation" for his decision on a motion. We are requiring only that where motions have been opposed, he provide some rationale for his ruling on the motion. Immigration judges have wide authority and discretion in disposing of cases before them, but that authority is not unfettered: they are required to comply with the applicable law and regulations. With regard to motions, this requires, among other things, that the immigration judge reasonably find that a prima facie showing of eligibility for the relief sought has been made.

This case in fact presents a good example of the necessity of requiring the immigration judge to state the reasons for his decision, since our review of the record has convinced us that the respondent's motion was inappropriately granted by the immigration judge. In order to warrant reopening to apply for suspension of deportation, the respondent must make a prima facie showing that he satisfies all the requirements of section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(A)(1) (1982). *INS* v. *Wang*, 450 U.S. 139 (1981). Thus, the respondent must make, inter alia, a prima facie showing that he or his United States citizen or lawful permanent resident spouse, parent, or child will suffer extreme hardship if he is deported. *See Moore* v. *INS*, 715 F.2d 13 (1st Cir. 1983); *Israel* v. *INS*, 710 F.2d 601 (9th Cir. 1983); *Diaz-Salazar* v. *INS*, 700 F.2d 1156 (7th Cir. 1983), *cert. denied*, 462 U.S. 1132 (1983); *Matter of Sipus*, 14 I&N Dec. 229 (BIA 1972); *Matter of Lam*, 14 I&N Dec. 98 (BIA 1972). Such a showing has not been made in this case.

The respondent supplemented his Application for Suspension of Deportation (Form I-256A) with affidavits attesting to his good character, with police reports reflecting no derogatory information about the respondent, with copies of income tax returns and pay receipts, and with the birth certificates of his two children, born

January 6, 1978, and May 28, 1981. The respondent also submitted his own affidavit, in which he stated that he has adjusted completely to life in the United States and has severed ties with his friends in Colombia. He asserted that his older child would suffer hardship if he leaves him, because the child is dependent upon him financially and psychologically. He also stated that both children will suffer hardship if they accompany him to Colombia. He stated in this regard that "diseases run rampant in Colombia" and that many children there die from simple childhood diseases because they do not get innoculated. The affidavit further states that he would fear for his life in Colombia because the government there engages in violent, unexplained activities against the people. The respondent asserted that he would have no job in Colombia and would be forced to seek refuge with his family, which would be degrading.

The evidence presented by the respondent in support of his suspension application does not constitute a prima facie case of extreme hardship. It is well settled that the birth of children in the United States by itself does not constitute a prima facie case of extreme hardship. *See Israel* v. *INS, supra; Diaz-Salazar* v. *INS, supra; see also Bueno-Carillo* v. *Landon*, 682 F.2d 143 (7th Cir. 1982); *Balani* v. *INS*, 669 F.2d 1157 (6th Cir. 1982); *Ayala-Flores* v. *INS*, 662 F.2d 444 (6th Cir. 1981); *Banks* v. INS, 594 F.2d 760 (9th Cir. 1979); *Davidson* v. *INS*, 558 F.2d 1361 (9th Cir. 1977); *Matter of Kim*, 15 I&N Dec. 88 (BIA 1974). The fact that the medical facilities in Colombia may not be as good as they are in this country does not mean that his children, should they go with him to Colombia, will suffer extreme hardship there. We note that much of the respondent's concern with regard to his children related to the lack of immunizations in Colombia and the resultant rampant childhood diseases. Most of these immunizations are given in the United States very early in life (the respondent's children's birth certificates suggest a schedule of immunizations which reflects that most should be given by the age of 18 months). The respondent's children may have had these immunizations and presumably could still get them if they have not. The respondent's children are still very young and should have little difficulty in adjusting to life in Colombia, should they accompany their father there.

We also note that while the births of the respondent's children in this country constitute equities, equities which are acquired after a final order of deportation has been issued against an alien are entitled to less weight than those acquired before an alien has been found deportable. *See Carnalla-Munoz* v. *INS*, 627 F.2d 1004, 1007 (9th Cir. 1980); *Faddah* v. *INS*, 553 F.2d 491, 496 (5th Cir. 1977).

The respondent's children were born well after he was found deportable.

We also think it appropriate to consider the fact that the respondent absconded from the immigration authorities and acquired the physical presence required for suspension by evading the immigration laws. *See, e.g., Men Keng Chang* v. *Jiugni,* 669 F.2d 275 (5th Cir. 1982). That the respondent has more recently cooperated with the Service does not negate the fact that he has previously flouted our immigration laws.

The respondent is still young and able to work. He has not shown that he would totally unable to find any employment in Colombia. Nor has he substantiated in any way his claims that violence in Colombia is so endemic that his life would be in danger there. The respondent's assertions that he adjusted completely to life in the United States are likely to be made by any alien who has spent a number of years in this country. The respondent still has family in Colombia, and while he may not want to be dependent upon them, they are likely to be able to help ease his transition to life in his homeland, if not financially, then at least emotionally. In sum, the respondent has not made a prima facie case that he or his children will suffer extreme hardship if he is deported. Reopening of the proceedings was therefore not warranted. The appeal from the immigration judge's grant of the motion to reopen will accordingly be sustained, the immigration judge's order granting the motion will be vacated, and the motion to reopen will be denied.

ORDER: The appeal is sustained, the immigration judge's order granting the motion to reopen is vacated, and the motion is denied.