

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-27-2006

# Marsan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4024

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Marsan v. Atty Gen USA" (2006). *2006 Decisions.* Paper 414.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/414

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-4024

———————

WOLFF MARSAN,

Petitioner,

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA

———————————————————————

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency No. A42 146 429)
Immigration Judge:  Honorable Annie S. Garcy

———————————————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
September 27, 2006

Before: SLOVITER, SMITH AND VAN ANTWERPEN, <u>CIRCUIT JUDGES</u>

(Filed: September 27, 2006)
———————————

OPINION
———————————

PER CURIAM

Petitioner, Wolff Marsan, a native and citizen of Haiti, petitions for review of a final order of the Board of Immigration Appeals ("BIA"). For the following reasons, we will deny the petition.

## I.

Marsan entered the United States as a lawful permanent resident in 1989. In July 1996, he was convicted in Massachusetts state court of possession of a Class B substance (cocaine) with intent to distribute. In September of that year, Marsan was charged as being deportable as an alien convicted of a controlled substance offense pursuant to former section § 241(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1251(a)(2)(B)(i) (repealed 1996). Marsan was deported to Haiti in 1998 pursuant to an order of the BIA entered on September 23, 1997.

In January 2003, Marsan was intercepted at the airport as he attempted to reenter the United States. The government initiated new removal proceedings.[1] Marsan moved to reopen the original deportation proceedings for consideration of an application for relief under INA § 212(c) [8 U.S.C. § 1182(c) (repealed 1996)]. An Immigration Judge

---

[1] Marsan was charged under INA § 212(a)(2)(A)(i)(II) [8 U.S.C. § 1182(a)(2)(A)(i)(II)], as an alien who had been convicted of a controlled substance violation; INA § 212(a)(2)(C) [8 U.S.C. § 1182(a)(2)(C)], as an alien the immigration officer knows or has reason to believe has been a controlled substance trafficker; INA § 212(a)(7)(A)(i)(I) [8 U.S.C. § 1182(a)(7)(A)(i)(I)], as an alien who entered without a valid immigrant visa or entry document; and INA § 212(a)(9)(A)(ii) [8 U.S.C. § 1182(a)(9)(A)(ii)], as an alien who has been removed and who seeks admission within ten years of removal.

("IJ") denied the motion in an interlocutory order dated July 28, 2003. Marsan also applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). His claims were based on allegations of persecution and torture in Haiti because he had been imprisoned as a criminal deportee upon his return in 1998, and because of his refusal to join the Lavalasse political party.[2] On September 17, 2003, the IJ sustained the charges of removability and denied Marsan's applications for relief.

The BIA affirmed, finding that Marsan was ineligible to reopen the prior proceedings to apply for § 212(c) relief because he had departed the United States after commencement of deportation proceedings, and had not demonstrated that those proceedings resulted in a gross miscarriage of justice.[3] See 8 C.F.R. § 1003.2(d); Matter of Roman, 19 I. & N. Dec. 855, 856-57 (BIA 1988) (providing that "an alien may collaterally attack a final order of exclusion or deportation in a subsequent deportation proceeding only if she can show that the prior order resulted in a gross miscarriage of

---

[2] The State Department Country Report on Human Rights Practices in Haiti, which Marsan submitted in support of his applications, refers to the party as "Fanmi Lavalas."

[3] Before proceeding to the merits of Marsan's motion to reopen, the BIA stated that the issue was not properly before it because Marsan had not appealed from the IJ's interlocutory order which effectively rejected his application for § 212(c) relief, and because the IJ had not incorporated the interlocutory order into her final decision. Notably, however, interlocutory appeals are not ordinarily entertained by the BIA. See Singh-Bhathal v. INS, 170 F.3d 943, 945 (9th Cir. 1999) (citing Matter of Correa, 19 I. & N. Dec. 130 (BIA 1984)). Instead, the BIA reviews interlocutory orders as raised by the parties on appeal from a final decision of an IJ. See Matter of Sacco, 15 I. & N. Dec. 109, 110 (BIA 1974). In light of the above, we will review the merits of the IJ's interlocutory decision.

justice."). The BIA also concluded that Marsan's conviction for possession with intent to distribute cocaine was a particularly serious crime that rendered him statutorily ineligible for asylum, withholding of removal pursuant to INA § 241(b)(3)(A), or withholding of removal pursuant to the CAT. See INA §§ 208(b)(2)(A)(ii) [8 U.S.C. § 1158(b)(2)(A)(ii)]; 241(b)(3)(B)(ii) [8 U.S.C. § 1231(b)(3)(B)(ii)]; 8 C.F.R. § 1208.16(d)(2). Finally, the BIA denied Marsan's request for deferral of removal under the CAT because his past imprisonment did not establish a likelihood of torture and because he provided "inconsistent, unreliable, [and] internally contradictory" assertions concerning the abuse allegedly inflicted by Lavalasse party members. See 8 C.F.R. § 1208.17(a).

In April 2004, Marsan filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of New Jersey.[4] The District Court granted Marsan's request to stay his removal. However, without taking any substantive action on the § 2241 petition, the District Court transferred it to this Court for treatment as a petition for review pursuant to the REAL ID Act of 2005. See Bonhometre v. Gonzales, 414 F.3d 442, 446 (3d Cir. 2005). Marsan later filed a motion here to lift the District Court's stay order, which we granted. According to the government, he was removed to Haiti on January 10, 2006.

---

[4] Marsan also filed a motion to reconsider with the BIA. The BIA denied the motion on April 26, 2004, finding that Marsan "failed to establish that the recent political changes in Haiti would alter the outcome of [his] application for deferral of removal under the [CAT]." Because Marsan did not petition for review of this order, we are without jurisdiction to review it. See Stone v. INS, 514 U.S. 386, 406 (1995).

4

II.

Before we reach the merits of Marsan's claims, we must first address the scope of our jurisdiction. See, e.g., Shaffer v. GTE North, Inc., 284 F.3d 500, 502 (3d Cir. 2002). Under INA § 242(a)(2)(B)(ii) [8 U.S.C. § 1252(a)(2)(B)(ii)], we lack jurisdiction to review a decision "the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." In addition, we may not review "any final order of removal against an alien who is removable by reason of having committed," inter alia, a controlled substance violation covered in INA § 212(a)(2). INA § 242(a)(2)(C) [8 U.S.C. § 1252(a)(2)(C)]. However, the REAL ID Act of 2005 restored direct review of constitutional claims and questions of law presented in petitions for review of final removal orders. See INA § 242(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D)]; Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005). Because Marsan's conviction in state court for possession with intent to distribute cocaine clearly is a controlled substance offense under INA § 212(a)(2)(A)(i)(II), we may consider only constitutional issues, pure questions of law, and issues of application of law to uncontested facts. See Kamara v. Attorney General, 420 F.3d 202, 211 (3d Cir. 2005). "[F]actual or discretionary determinations continue to fall outside [our] jurisdiction." Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006).

III.

Marsan contends that the BIA erred in determining that his conviction for possession of cocaine with intent to distribute was a "particularly serious crime." An

5

alien who has been "convicted by a final judgment of a particularly serious crime" is statutorily ineligible for asylum, withholding of removal under § 241(b)(3)(A), or withholding of removal pursuant to the CAT. See INA §§ 208(b)(2)(A)(ii); 241(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). Whether an alien is ineligible under the "particularly serious crime" exception to eligibility for asylum and withholding is not a decision "the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." See Alaka v. Attorney General, – F.3d –, 2006 WL 1994500, at *3-8 (3d Cir. July 18, 2006). In addition, Marsan raises a question of law. Therefore, we have jurisdiction to review his claim. Id. at *10.

For purposes of asylum eligibility, an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime. See INA § 208(b)(2)(B)(i). Marsan was convicted under Chapter 94C, § 32A of the Massachusetts General Laws, which prohibits a person from "knowingly or intentionally manufactur[ing], distribut[ing], dispens[ing], or possess[ing] with intent to manufacture, distribute or dispense" cocaine. A state drug conviction is an aggravated felony if it would be punishable as a felony under the federal Controlled Substances Act. See Gerbier v. Holmes, 280 F.3d 297, 307-08 (3d Cir. 2002). Here, the pertinent federal analog is 21 U.S.C. § 841(a), which prohibits the knowing or intentional "possess[ion] with intent to . . . distribute" a controlled substance, for example, cocaine. A substantive drug offense contained in the Controlled Substances Act is a felony if the crime prescribes a maximum sentence of more than one year. See 18 U.S.C. § 3559. Possession

6

with intent to distribute cocaine carries a maximum penalty in excess of one year. See 21 U.S.C. § 841(b). Therefore, Marsan's conviction constitutes an aggravated felony barring him from applying for asylum.

For purposes of eligibility for withholding of removal, an alien shall be considered to have been convicted of a particularly serious crime (1) where he has been convicted of an aggravated felony for which he has been sentenced to an aggregate term of imprisonment of at least five years, or, (2) where the "Attorney General . . . determin[es] that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." See INA § 241(b)(3)(B). The BIA concluded that Marsan – who was sentenced to less than five years in prison – had not rebutted the presumption that his drug trafficking offense was a particularly serious crime. See In re Y-L-, 23 I. & N. Dec. 270, 274 (BIA 2002) (holding that "aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes' within the meaning of section 241(b)(3)(B)(ii)."). Contrary to Marsan's contentions, the application of this presumption was within the Attorney General's authority, see INA § 241(b)(3)(B), and the BIA conducted the requisite individualized determination in finding that Marsan "has not shown the extenuating circumstances necessary to depart from the presumption." See Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (stating that the "Board is not required to write an exegesis on every contention, but only to show that it has reviewed the record and grasped the movant's claims."). Indeed, Marsan offered no evidence that the amount of cocaine and money involved in his offense

7

was small, that he was only peripherally involved in the crime, and that his offense did not involve violence, organized crime or terrorist organizations, and harm to juveniles. See Y-L-, 23 I. & N. Dec. at 276-77 (outlining factors that must be present to justify departure from presumption that drug trafficking felonies are particularly serious crimes). Thus, the BIA properly concluded that Marsan's offense constituted a particularly serious crime under INA § 241(b)(3)(B), rendering him ineligible for withholding of removal.

IV.

Marsan further asserts that the BIA erred in finding that he failed to establish eligibility for deferral of removal under the CAT. To the extent that this alleges an erroneous interpretation of the evidence supporting the adverse credibility determination concerning the abuse allegedly inflicted by Lavalasse party members, we lack jurisdiction. See Cruz v. Attorney General, 452 F.3d 240 (3d Cir. 2006) ("[w]here § 1252(a)(2)(C) applies, factual or discretionary determinations fall outside the jurisdiction of the courts of appeals entertaining petitions for review"); Jishiashvili v. Attorney General, 402 F.3d 386, 392 (3d Cir. 2005) (holding that "adverse credibility determinations are factual matters.").

We have jurisdiction, however, to consider Marsan's claim that the BIA applied the incorrect legal standard in denying his application for deferral of removal based on Haitian prison conditions. See INA § 242(a)(2)(D); Kamara v. Attorney General, 420 F.3d 202, 211 (3d Cir. 2005) (holding that court of appeals has jurisdiction to review application of law to fact under the CAT). The BIA evaluated Marsan's CAT claim

8

under Matter of J-E-, 23 I. & N. Dec. 291 (BIA 2002), where the BIA held that the inhuman and deplorable conditions of Haitian prisons, along with the possibility of indefinite detention, did not constitute torture because there is "no evidence that Haitian authorities are detaining criminal deportees with the specific intent to inflict severe physical or mental pain or suffering." 23 I. & N. Dec. at 300. Marsan alleges that the BIA should have applied Zubeda v. Ashcroft, 333 F.3d 463, 473 (3d Cir. 2003), in which we stated that deferral of removal under the CAT does not require a specific intent to inflict torture. We have since held, however, that a showing of "specific intent" to cause severe pain and suffering is required to establish torture, and rejected as dicta any statements in Zubeda to the contrary. See Auguste v. Ridge, 395 F.3d 123, 148 (3d Cir. 2005); see also Toussaint v. Attorney General, – F.3d –, 2006 WL 2061333, at * 5 (3d Cir. July 26, 2006) (holding that "the BIA properly relied on J-E- in denying [the petitioner] protection under the CAT."). Marsan further argues that the BIA failed to adequately consider that he was previously detained in a Haitian prison. The BIA did specifically state that it had "considered the respondent's past harm and potential for future harm," and there is no indication that Marsan's previous imprisonment would increase the likelihood of severe physical or mental pain or suffering personally directed at him.

## V.

Finally, Marsan argues that the BIA erred in denying his motion to reopen to seek relief under INA § 212(c), which allowed removable aliens, who met certain

9

qualifications, to request discretionary relief from deportation. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which became effective on April 1, 1997, repealed § 212(c). Nevertheless, the Supreme Court has held that § 212(c) relief "remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." INS v. St. Cyr, 533 U.S. 289, 326 (2001). In light of St. Cyr, the government promulgated regulations that provide for a "special motion" to reopen allowing aliens who agreed to plead guilty (or nolo contendere) to certain crimes prior to April 1, 1997, to apply for § 212(c) relief. See 8 C.F.R. §§ 1003.44 & 1212.3. Importantly, however, "[a] motion to reopen . . . shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States." 8 C.F.R. § 1003.2(d).

Even assuming arguendo that Marsan is otherwise eligible for § 212(c) relief, he may not reopen the original immigration proceedings to apply for a waiver of deportation because he left the United States after those proceedings were initiated. See 8 C.F.R. § 1003.2(d); see also 8 C.F.R. § 1003.44(k)(2) (specifically providing that special motions to reopen are unavailable to aliens "issued a final order of deportation . . . who then illegally returned to the United States"). Marsan alleges that this prohibition is unconstitutional because it "irrationally distinguishes" aliens who have illegally returned to the United States from those who have not. "[D]isparate treatment of different groups

10

of aliens triggers only rational basis review under equal protection doctrine." DeSousa v. Reno, 190 F.3d 175, 184 (3d Cir. 1999). Here, discouraging aliens who have already been deported from illegally reentering the country provides a rational basis for distinguishing between different classes of aliens. See Robledo-Gonzales v. Ashcroft, 342 F.3d 667, 683 (7th Cir. 2003). To the extent Marsan argues that the BIA improperly refused to sua sponte reopen the deportation proceedings, we lack jurisdiction to review such a challenge. See Calle-Vujiles v. Ashcroft, 320 F.3d 472, 474-75 (3d Cir. 2003). Finally, we agree that Marsan may not collaterally attack the original deportation order because he has not demonstrated that those proceedings resulted in a gross miscarriage of justice.

VI.

For these reasons, and after careful consideration of the record and the parties' contentions, we will deny Marsan's petition for review.